117 So.2d 726 (1960)
Mary Lee KING, Petitioner,
v.
Mary O. KELLER, Dade County Port Authority, Bituminous Casualty Corporation, and Florida Industrial Commission, Respondents.
Supreme Court of Florida.
February 3, 1960.
*727 Snyder & Young, No. Miami Beach, for petitioner.
Lon M. Hudnall, Lally & Miller, Miami, Burnis T. Coleman and Paul E. Speh, Tallahassee, for respondents.
O'CONNELL, Justice.
In this case two women claim compensation benefits as the surviving spouse of the deceased employee. The Deputy Commissioner was of the opinion that the respondent Mary O. Keller, deceased's first wife, was entitled to such benefits. Petitioner Mary Lee King, deceased's second wife, seeks review of the order of the Full Commission affirming the Deputy's order.
The decedent Harry Keller, alias Henry King, married respondent in 1910. They lived in the City of Pittsburgh, Pennsylvania. Three children were born to them. In 1923 the decedent and his wife separated; he paid support money for her and the children, under an agreement, until 1925, when he disappeared, reportedly with a married woman. Mary Keller thereupon took out a support warrant against him, but this warrant was never served.
Decedent then changed his name from Harry Keller to Henry King. While respondent continued to reside in Pittsburgh, always in the same ward thereof, decedent moved about frequently. Allegedly, he lived in several states and countries before his death in 1956, which occurred while he was residing and working in Dade County, Florida. His death was occasioned by an accident arising out of and in the course of his employment by the respondent, Dade County Port Authority.
In 1948 decedent and the petitioner, Mary Lee King, went through a civil marriage ceremony in South Carolina. They lived together until his death in 1956.
The respondent workmen's compensation carrier for the decedent's employer paid to petitioner survivor's benefits for some weeks, but ceased to do so when respondent Mary Keller filed her claim to such benefits.
In her attempt to substantiate her claim that she was the surviving wife of the decedent, respondent Mary Keller presented in evidence certain letters and certificates *728 from the clerks of various courts in several counties of various states in which the decedent had lived. These statements were all to the effect the records of the subject county had been searched and they revealed no evidence of a divorce proceeding involving Harry or Henry Keller by or against Mary O. Keller. Included were statements from clerks of courts in Pitt County, South Carolina; Parish of Orleans, Louisiana; County of Cuyahoga, Ohio; Dade County, Florida; Adams County, Washington; and the County Clerk, Los Angeles, California.
Petitioner testified on cross-examination that the deceased told her he had been born in Oregon and had lived in California, Mexico, Ohio, Pennsylvania, Washington, Arizona, Canada and Utah. Then, on redirect, she said he had told her he had lived all over the Northwest, visited most of the states and lived in and visited other countries as well. As can be seen, some of the states in which the decedent purportedly lived were not represented by the respondent's certificates of search of divorce records. Further, respondent did not present a similar certificate from the bureau of vital statistics of any of the states in which decedent is supposed to have lived. Such bureaus, in those states having them, usually record all divorce decrees granted in any county within that state. For instance, respondent submitted only a certificate of search from Dade County, Florida, but none from the Florida State Bureau of Vital Statistics, which bureau records all such decrees granted in any county in this state.
Respondent also testified that although she had continued to live within the same ward in Pittsburgh, Pennsylvania subsequent to her separation from her husband in 1923, she had never been served with notice of any divorce proceeding filed by the deceased. She stated she had never sued for divorce. In a deposition, submitted into evidence, the son of the respondent and the decedent, who had been in contact with his father off and on during the 30 odd years following his parents' separation, testified he knew of no divorce between his parents.
The Deputy stated that "checking with the various counties and localities where the decedent has lived during this period of separation to the time of his death discloses that no action for a divorce was ever undertaken by decedent or Mary Keller." He felt respondent had by a preponderance of evidence overcome the presumption of validity ordinarily attaching to the latest of two or more marriages.
Upon review, the Full Commission was of the opinion the Deputy's findings were supported by competent substantial evidence and approved the award of survivor's benefits to the respondent Mary Keller, decedent's first wife.
The sole question presented to us is whether the respondent presented substantial, competent evidence sufficient to overcome the presumption of the validity of decedent's marriage to petitioner.
It is undisputed that a presumption of validity attaches to one's last marriage. Cater Furniture Co. v. Banks, 1943, 152 Fla. 377, 11 So.2d 776. In Teel v. Nolen Brown Motors, Inc., Fla. 1957, 93 So.2d 874 and in Johnson v. Johnson, Fla. 1951, 51 So.2d 421 this presumption is referred to as "one of the strongest known to the law."
Petitioner's argument is that the instant case should be governed by the doctrine enunciated by this Court in Teel v. Nolen Brown Motors, 93 So.2d 874, supra. In that case we were of the opinion that, under somewhat similar circumstances, the first wife, while not required to eliminate every remote possibility that a divorce might have been secured by her husband, should establish the absence of any reasonable probability he did. There, we ruled that the first wife should have made a more exhaustive search of the public records than a search limited to one county in this state. There was evidence the husband had lived *729 in the State of Georgia as well as Florida. We said, at 93 So.2d, page 876:
"Conceivably there may be situations where the courts would necessarily have to rely on the uncorroborated testimony of the one attacking the second marriage. However, in this day of well-kept public records covering vital statistics, such as, births, marriages and divorces, we feel that to the extent possible the public records available should be exhausted in an effort to establish the fact of divorce or the absence of a divorce as the case may be. In this case, for example, we judicially know that the State Bureau of Vital Statistics is the custodian of records that reflect the granting of divorces in every county in Florida. A similar agency exists in the State of Georgia, where the deceased employee in the instant case evidently resided for a considerable period of time. In order to eliminate the doubt as to the presence or lack of a divorce, and in order to discharge the burden placed upon her, we think the first wife should have exhausted a search of these public records. While her attorney testified that an examination of the records in Dade County reflected no divorce, the fact remains that the deceased could have obtained a divorce in any one of a number of Florida counties as well as in the State of Georgia. We, therefore, conclude that the deputy and the full Commission misconceived the legal effect of the uncontroverted testimony. This is so for the reason that the testimony was legally insufficient to overcome the presumption in favor of the validity of the second marriage. See Roberts v. Roberts, 124 Fla. 116, 167 So. 808; J.J. Cater Furniture Co. v. Banks, 152 Fla. 377, 11 So.2d 776; Hillyer & Lovan v. Florida Industrial Commission, 155 Fla. 144, 19 So.2d 838; Johnson v. Johnson, Fla. 1951, 51 So.2d 421."
In Perkins v. Richards Constructors, Inc., Fla.App. 1959, 111 So.2d 494, the first wife was successful in overcoming the validity of the decedent's second marriage. We note that she utilized certificates of search from the Bureau of Vital Statistics of Florida, the Registrar of Vital Statistics of Mississippi, and from the chancery clerks of two counties in Mississippi, where decedent was known to have lived.
Hillyer & Lovan v. Florida Industrial Comm., 1944, 155 Fla. 144, 19 So.2d 838, 840, is cited in Teel, supra. In that case the presumption of validity of the second marriage was successfully rebutted where the first wife produced a certificate from the Bureau of Vital Statistics to the effect no divorce had been granted in Florida, and introduced "documentary evidence to the same effect" from two other states where the husband had resided. Further, she produced evidence to the effect that no divorces are granted in another state in which he had resided.
The first of three wives of the decedent was successful in rebutting the presumption of validity pertaining to the third marriage in Johnson v. Johnson, Fla. 1951, 51 So.2d 421. There was no suspicion the husband had gone to another state to obtain a divorce and the first wife secured a certificate of search from the Bureau of Vital Statistics for this state. This Court ruled she had obtained sufficient evidence in rebuttal of the presumption of validity of the last marriage, and stated, at 51 So.2d page 422:
"* * * The first wife should not be required to account for the movements and whereabouts of her errant husband for ever moment of the period of time which elapsed between his desertion of her and his death. It is sufficient if the evidence when weighed collectively establishes that there could be no reasonable probability that the husband secured a divorce. * * *"
*730 The husband, in Roberts v. Roberts, 1936, 124 Fla. 116, 167 So. 808, had lived in Florida, Mississippi, Alabama, and Louisiana. In attempting to rebut the presumption of the validity of a second marriage, the first wife obtained evidence that he had secured no divorce in Duval County, Florida. This Court held that this was insufficient but stated that it was not necessary for the first wife to search the records of every county in each of those four states in which decedent had lived. The Court said that if the first wife could show specifically in what counties decedent had lived and that no divorce had been obtained in any of such counties, she could overcome the presumption. See also Annotation, 14 A.L.R.2d 7, 54 (1949) where it is noted that some jurisdictions hold that the presumption a prior marriage has been dissolved by divorce is overcome by proof from every county where the husband had lived that no divorce had been obtained.
In the instant case there is evidence that the decedent resided in places other than those in which respondent obtained a search of the records of divorce proceedings. However, even if that were not the case, it appears that respondent has not made a sufficiently exhaustive search of the public records of those states in which it is known that the decedent resided. She should have presented a certificate of search from the bureau of vital statistics for each of those states, rather than from the clerk of the court of only one county thereof.
While the above ruling may appear to be contrary to this Court's pronouncements in Roberts v. Roberts, 167 So. 808, supra, it is in accord with our more recent holding in Teel v. Nolen Brown Motors, Inc., 93 So.2d 874, supra. And we do not feel there exists any actual conflict between the two cases, particularly with respect to the facts of this case. We are not placing upon respondent an unconscionable burden to exhaust every remote possibility her husband obtained a divorce from her, but are asking her to exhaust every reasonable possibility that he did. It is not unreasonable to at least require respondent to obtain a certificate from the bureau of vital statistics for each state in which the evidence shows decedent resided subsequent to his separation from the respondent. Should any of those states not have a central recording office, such as a bureau of vital statistics, it would be unreasonable for respondent to be required to obtain a certificate from each county in that state, but she should be required to secure such a certificate from any specific county therein in which there is evidence to show her husband resided.
Accordingly it is our view that the evidence presented by the respondent was not sufficient to rebut the presumption of validity attaching to the marriage between the decedent and petitioner. Because it may well be possible for respondent to produce the proof necessary to overcome the presumption of validity attaching to the second marriage this cause should be returned to the Deputy Commissioner for further proceedings in which respondent should be given the opportunity to do so.
The petition for writ of certiorari is hereby granted. The order of the Full Commission affirming the Deputy Commissioner's award of survivor's benefits to respondent Mary Keller is hereby quashed and the cause is remanded with directions that further proceedings be ordered before the Deputy Commissioner in which respondent shall be allowed the opportunity to present additional evidence to rebut the presumption of the validity of the decedent's marriage to petitioner Mary King, all in accordance with the above opinion.
It is so ordered.
THOMAS, C.J., and TERRELL, ROBERTS and THORNAL, JJ., concur.