THORNAL, Justice.
By a petition and a cross petition for a writ of certiorari we are requested to review an order of the Florida Industrial Commission affirming an order of a deputy commissioner awarding workmen’s compensation benefits to Mary O. Keller as a widow.
We must decide whether either of two contesting claimants is entitled to workmen’s compensation benefits as the widow of Harry Keller alias Henry King.
The factual background of the complicated situation was delineated in our opinion when this matter was previously here. King v. Keller, Fla., 117 So.2d 726.
Harry Keller married the respondent Mary O. Keller in 1910. The parties became the parents of three children and separated in 1923 when Keller became enamored by the affections of another woman. They entered into a support money agreement and in 1925 Keller disappeared. Pie was never again seen by his wife Mary.
After apparently shifting around the country Keller moved to Dade County in 1941 and took the name of Henry King. In 1947 he met a lady whom he married in 1948. She became the “second wife” and was known as Mary Lee King. These parties lived together as husband and wife until Keller-King came to his death in an industrial accident in 1956. In fairness to the “second wife” the record sustains the conclusion that she was completely innocent of any knowledge of the existence of Keller’s prior wife. Her conduct in the tragic affair was completely without suspicion. After her “husband” died she learned for the first time that he had another living wife.
When the matter was here before we applied the strong presumption in favor of the validity of the second marriage. We held that the first wife had not evidenced sufficient diligence in exhausting available sources of public records to establish with reasonable certainty that her husband had never obtained a divorce thereby legitimatizing the second marriage. When the matter was again before the deputy the first wife submitted a certificate of the Florida Bureau of Vital Statistics to the effect that there was no record of any divorce between them in the State of Florida. She submitted similar certificates from similar agencies from 41 states. Many of them could furnish no helpful information for the reason that the states involved did not maintain central bureaus for recording divorce statistics. In addition, she filed letters from approximately 150 counties in Ohio, Pennsylvania and other states where Keller was known to have traveled. All of these failed to reveal any divorce proceeding by the deceased Keller. On the basis of all of this evidence, the second deputy commissioner, as did the first, concluded that the first wife had overcome the presumption of validity which attached to the second marriage, and that she was entitled to workmen’s compensation benefits as the widow of the deceased employee.
By petition for certiorari the second wife Mary Lee King contends that the record is still insufficient to support the findings of the deputy. However, our examination of the record now leads us to conclude that the first wife has exhausted every reasonable source of information to establish the nonexistence of a divorce. The first wife relies upon our opinion in Roberts v. Roberts, 124 Fla. 116, 167 So. 808, 809. It was there held that proof from the public records of each county in which a deceased deviant *262 had resided during a prolonged period of separation from his wife would be sufficient to overcome the presumption of validity of the second marriage if no divorce was thereby revealed. We found nothing in Roberts v. Roberts' contrary to the conclusion which we reached in King v. Keller, Fla., 117 So.2d 726. We noted that the first wife should at least exhaust available sources in states having central recording bureaus and in counties where her husband was known to reside. This she has now done with the result that there appears to be no record evidence whatever that Keller ever obtained a divorce from his first wife. Consistent with the requirements of Roberts v. Roberts, supra, the record also sustains the view that during the period of separation the first wife remained faithful to her family responsibilities and that in actuality, her husband had no ground upon which he would have been entitled to a divorce. Certainly, there is not evident any ground for divorce which would be recognized as such under the laws of Florida. In addition, it is shown that during the entire 33 years of separation the first wife resided in the same county where the parties lived when Keller deserted her. If he had instituted a divorce by constructive service reasonable inquiry would have revealed her whereabouts. This would have been essential to support the validity of any divorce obtained on constructive service.
When the entire record, which includes the record in the first proceeding, is thoroughly examined we must find that the deputy ruled correctly when he concluded that the presumed validity of the second marriage had been overcome and that the first wife was the legal widow of the deceased employee.
By their cross petition for certiorari the employer and carrier concede the correctness of the deputy’s conclusion regarding the continued validity of the first marriage. They contend, however, that the first wife is not entitled to receive compensation benefits because of the provisions of Section 440.02(15), Florida Statutes, F.S.A., which reads as follows:
“The term ‘widow’ includes only the decedent’s wife, living with him at the time of his injury and death, or dependent for support upon him and living apart at the said time for justifiable cause.” (Emphasis supplied)
The carrier contends that because of the long period of separation during which the first wife supported herself and children, it is clear that she was not “dependent for support upon” the employee at the time of his death. The carrier also contends that the first wife was not living apart from her husband “for justifiable cause.”
The deputy commissioner in the first order found that “Mary Keller” was “entitled to support and is the dependent of Harry Keller alias Henry King, decedent.” When the cause was heard by another deputy after remand, he also concluded that the first wife was the legal widow and entitled to benefits. By his order he incorporated all of the findings made by the first deputy as having been sustained by the record supplemented after remand.
The carrier points to certain so-called efforts at reconciliation which were allegedly made by Keller on two or three occasions between 1927 and 1930. The record hardly sustains a conclusion that these were bona fide efforts on the part of the husband to bring about a reconciliation with the wife whom he had deserted to move to another state with another woman. The most that could be found would be that he evidently made some inquiry regarding his first wife on a return visit to Pittsburgh where they originally lived. He did not call upon her or communicate with her in any fashion. Certainly, there was not sufficient effort to bring about a reconciliation to the extent that thereafter the first wife would be classed as the deserter. In fact, the entire record teems with evidence to support a conclusion that the first wife was thoroughly justified in living apart from her *263 husband. Moreover, during most of the period of separation she could not have found him if she had systematically set out to locate him.
The contention of the carrier regarding the absence of dependency presents a somewhat more difficult problem but in our view does not preclude the allowance to the first wife. Contrary to the contention of the carrier, the first deputy actually found Mary Keller to be entitled to support and to be dependent upon the deceased employee. This finding was adopted by the second deputy.
The carrier, however, points to our opinion in Tigertail Quarries Inc. v. Ward, 154 Fla. 122, 16 So.2d 812. It is contended that we there held that a wife guilty of desertion is not living apart from her husband “for justifiable cause” and that under such circumstances she must establish her dependency upon him in order to receive workmen’s compensation benefits at his death. The Tigertail Quarries decision is not controlling here because there it was clear that the wife had willfully deserted her husband and had taken up her abode with another man. Here, the shoe is on the other foot. Mrs. Keller did not desert her husband. On the contrary, he deserted her and disappeared for parts unknown with another woman.
The instant case is controlled by our opinions in Johnson v. Midland Constructors, Inc., 152 Fla. 289, 11 So.2d 895, and Wilson Cypress Company v. Miller, 157 Fla. 459, 26 So.2d 441. In the cited cases we have in substance held that the obligation to support a wife arises out of the marital relationship as a matter of law. In Wilson Cypress Company, supra, it was pointed out that even though a wife had not been supported by her husband for many years, she would still be entitled to support despite the fact that he had deserted her and “left her on her own.” Her legal entitlement to support is the test of dependency applicable to a wife or widow under Section 440.02(15), Florida Statutes, F.S.A.
In the instant case the husband entered into an agreement promising to pay to the wife a stipulated amount for the support of herself and the three children. He met the obligation for about two years and absconded. His continued recognition of the obligation was evidenced in 1936, some 13 years after the initial desertion when he had transferred to his first wife, in consideration of delinquent payments under the support agreement, the value of his share in the estate of a deceased brother. The fact that a husband deserts his family, changes his name, and disappears to parts unknown, would not deprive the deserted wife to her legal entitlement to support, even though it would impose upon her the physical necessity of earning a living in order to provide sustenance for herself and children. In addition, the record also shows that when Keller died his first wife was living with a daughter and that her income consisted merely of social security benefits. She was then 72 years of age. Undoubtedly, if she had known the whereabouts of her delinquent husband she could have forced some contribution from him for her maintenance.
We conclude that the record sustains the deputy’s finding that the first wife was entitled to support and that she was legally dependent upon the deceased employee. We hold that his findings are sufficient with reference to the requirement that her living apart from her husband was justified. Certainly there is adequate evidence to support such a conclusion.
A point is made that the deputy committed error in allowing into evidence many letters from county vital statistics officials which were not under the seal of the office. We have held that in administrative proceedings the agency involved is not bound by the same technical rules of evidence that are applicable in formal judicial proceedings. Degroot v. Sheffield, Fla., 95 So.2d 912. All of these letters were accompanied by envelopes showing the postmark indicating the time and place of mailing. They all appeared to reflect official *264 signatures of the officers involved and, although they were not the best evidence, we think that to impose upon the claimant the burden of authenticating each letter of each county official in approximately ISO counties would be tantamount to establishing an insuperable barrier against the assertion of her claim. The deputy was correct in considering the letters for the purpose for which they were offered.
Finding that the order of the deputy was supported by competent substantial evidence and that there has been no deviation from the essential requirements of the law, it must be approved. Therefore, the affirming order of the full commission was correctly entered, and the petition and cross petition for certiorari are severally denied.
It is so ordered.
ROBERTS, C. J., and THOMAS and O’CONNELL, JJ., concur.
TERRELL, J., dissents.