238 So.2d 290 (1970)
In re ESTATE of Carl Sylvester YOHN, Deceased.
No. 39343.
Supreme Court of Florida.
July 29, 1970.
*291 Donald H. Partington, of Harrell, Wiltshire, Bozeman, Clark and Stone, Pensacola, for petitioner.
John M. Coe, of Coe & Coe, Pensacola, for respondent.
ADKINS, Justice.
By petition for certiorari, we have for review a decision of the District Court of Appeal, First District (In Re Estate of Yohn, 229 So.2d 612), which allegedly conflicts with a prior decision of this Court (Roberts v. Roberts, 124 Fla. 116, 167 So. 808) on the same point of law. Fla. Const., art. V, § 4, F.S.A.
The question is whether the first wife, Myrtle Paul Yohn, or the second wife, Margaret Fillingim Yohn, is the lawful widow of Carl S. Yohn.
Carl Yohn married his first wife in Mississippi during the year 1955. A child, Jack Bert Yohn, was born in 1956. Carl, a resident of Pensacola, Escambia County, Florida, had been in the service and upon his discharge visited his mother in Chicago. In 1957, the first wife, apparently without cause, left him and went to the west coast of the United States, taking the child with her. She had no further contact with her husband during his lifetime.
*292 Carl Yohn lived in Chicago during 1957 and 1958 and obtained employment there. However, he considered his home as being in Pensacola, Florida. His general occupation was that of a seaman and he was sometimes employed on a dredge boat or a tug boat. The record shows that he was employed for some time in Biloxi, Mississippi.
In 1961, Carl Yohn filed a complaint in Escambia County, Florida, seeking a divorce from his first wife. He made the required allegation that he was unable to ascertain the residence of his first wife after diligent search and inquiry and secured service by publication. A decree pro confesso was entered July 21, 1961. This action was subsequently dismissed on May 11, 1964 for want of prosecution.
In 1965, Carl Yohn stated he was "as free as the breeze" and that he was not a married man. On January 17, 1966, he applied for a marriage license and stated under oath that he had previously been married once and was divorced. On this date he married his second wife.
Carl died on June 19, 1967, and letters of administration were issued by the County Judge of Escambia County, Florida, to the second wife.
A petition was then filed by Jack Bert Yohn, a minor, by his grandmother as next friend. It was alleged that he was the son of the decedent, having been born of the marriage between the decedent and Myrtle Paul. It appeared from the petition that the principal asset of the estate consisted of a claim for damages arising from the wrongful death of the decedent, for the recovery of which an action had been instituted by the administratrix and was then pending in Alabama, the state wherein Carl Yohn died. The petition suggested that the second wife may not be the lawful widow of the decedent and prayed that the Court inquire into the question of whether the second wife administratrix was the lawful wife of the decedent at the time of his death.
Both the first wife and the second wife appeared at the hearings before the County Judge, each asserting her status as the lawful wife of the decedent. At the hearings before the County Judge, the ceremonial marriage to the first wife was attacked because Myrtle Paul, the first wife, had previously entered into a common-law marriage with James Johnson. The evidence pertaining to this question is discussed in the opinion of the District Court of Appeal.
The County Judge held that the second wife was the lawful widow. In a separate order, Jackie Yohn was adjudged to be an heir of the deceased. The latter order is not contested.
On appeal, the District Court held there was a fatal deficiency in the evidence which precluded a judicial determination that a common-law marriage was contracted and entered into by the first wife Myrtle and James Johnson. The Court then said:
"This being so, Myrtle Paul possessed the legal capacity to contract a ceremonial marriage with the decedent in 1955. Since there was a sufficient showing that this marriage was not legally dissolved prior to the decedent's death in 1967, it must be held that as of that time Myrtle Paul was the lawful wife of the decedent and is now the widow entitled to share in the assets of his estate, if any assets there be." (Emphasis supplied.) 229 So.2d 612, 616.
In discussing the testimony of the first wife, Myrtle Paul, the District Court of Appeal observed:
"She testified that at no time subsequent to her marriage to decedent did she secure a divorce from him, nor did she have any knowledge of any divorce having been secured by him against her. The evidence adduced by petitioner established that there was no record of a divorce having been granted decedent against Myrtle in either the Court of Record or Circuit Court of Escambia *293 County where he lived subsequent to their separation. A certificate by the Bureau of Vital Statistics of the State Board of Health of Florida discloses no record in that office of any divorce having been secured by the decedent against his first wife. Myrtle testified that she had never remarried subsequent to her marriage with decedent, and insisted that she was his widow at the time of his death." (p. 614)
In Roberts v. Roberts, supra, this Court enunciated the standards concerning the burden or quantum of proof where conflict in marriages are involved, saying:
"[W]hat degree of proof is necessary to overcome the presumption in favor of the validity of the second marriage? We do not think complainant, as contended by appellee, is required to go in every county in Florida, Alabama, Mississippi, and Louisiana, and show that no divorce has been secured in any of the counties of these states; but if she shows the counties that William Roberts lived in during the thirty years that elapsed from his desertion of Laura Cheval Roberts to his marriage to Lucille Roberts and that no divorce was issued in any of these counties and that he had no ground on which to seek a divorce, the presumption in favor of the validity of the second marriage will be overcome." (Emphasis supplied.) (167 So. pp. 809-810)
The District Court of Appeal in its opinion in the case sub judice relied upon Quinn v. Miles, 124 So.2d 883 (Fla.App. 1st, 1960), where the Court said:
"It has been repeatedly held that if the records of the State Bureau of Vital Statistics fail to disclose any divorce by the decedent against his wife during the period of their separation, such evidence will be sufficient proof that no such divorce was ever procured, and likewise sufficient to rebut the presumption of validity attaching to the subsequent marriage of decedent." (p. 886)
In Quinn v. Miles, supra, the husband apparently had no grounds for divorce and resided in the State of Florida during all of his life.
The decisions have been in conflict on whether the first wife must show the absence of grounds for divorce in order to overcome the presumption of validity of the latest marriage. We take jurisdiction.
In discussing the rules previously announced concerning the presumptions and burden of proof involved in attacking the legality of the last marriage, this Court in Teel v. Nolen Brown Motors, 93 So.2d 874 (Fla. 1957), said:
"A presumption exists in favor of the validity of the last marriage. We have held that this is one of the strongest presumptions known to the law. The burden of rebutting it rests upon the party attacking the legality of the last marriage. While the alleged first wife is not required to eliminate every remote possibility that a divorce might have been secured by her husband, it is necessary that she tender evidence which when weighed collectively establishes the absence of a reasonable probability that her husband actually secured the divorce." (Empasis supplied.) (p. 876)
In Johnson v. Johnson, 51 So.2d 421 (Fla. 1951), Mary, the first wife, introduced a certificate from the Bureau of Vital Statistics, showing that no divorce had been reported for the deceased. The Court held that Mary had rebutted the presumption of validity existing in favor of the second wife's marriage to the deceased. However, the Court discussed the testimony as follows:
"Mary testified, without dispute, that she had no notice or knowledge of a divorce suit filed by Sylvester Johnson against her and that her husband had no grounds for divorce  he simply deserted her for another woman. Lula Levy, the mother of Sylvester Johnson, testified *294 without contradiction that Sylvester never established a residence anywhere other than the State of Florida and that he never lived outside of this State." (Emphasis supplied.) (p. 422)
In Hillyer & Lovan v. Florida Industrial Commission, 155 Fla. 144, 19 So.2d 838 (1944), the first wife introduced a certificate from the Bureau of Vital Statistics showing that no divorce had been granted in Florida. Documentary evidence to the same effect was introduced from the states of North Carolina and Tennessee, where the husband had worked "at short intervals." In addition, the evidence showed that the whereabouts of the first wife were known at all times by the deceased. These circumstances rebutted the presumption of validity of the second marriage.
In the first appearance of King v. Keller, 117 So.2d 726 (Fla. 1960), the only question involved was whether the first wife should make a more exhaustive search of the public records in order to overcome the presumption of the validity of a second marriage. This Court in its opinion said:
"In the instant case there is evidence that the decedent resided in places other than those in which respondent obtained a search of the records of divorce proceedings. However, even if that were not the case, it appears that respondent has not made a sufficiently exhaustive search of the public records of those states in which it is known that the decedent resided. She should have presented a certificate of search from the bureau of vital statistics for each of those states, rather than from the clerk of the court of only one county thereof." (p. 730)
The cause was remanded with directions that the first wife be allowed to present additional evidence to rebut the presumption of the validity of the second marriage.
On its second appearance, King v. Keller, 141 So.2d 259 (Fla. 1962), this Court discussed the applicable principles in the following language:
"[O]ur examination of the record now leads us to conclude that the first wife has exhausted every reasonable source of information to establish the nonexistence of a divorce. The first wife relies upon our opinion in Roberts v. Roberts, 124 Fla. 116, 167 So. 808, 809. It was there held that proof from the public records of each county in which a deceased deviant had resided during a prolonged period of separation from his wife would be sufficient to overcome the presumption of validity of the second marriage if no divorce was thereby revealed. We found nothing in Roberts v. Roberts contrary to the conclusion which we reached in King v. Keller, Fla., 117 So.2d 726. We noted that the first wife should at least exhaust available sources in states having central recording bureaus and in counties where her husband was known to reside. This she has now done with the result that there appears to be no record evidence whatever that Keller ever obtained a divorce from his first wife. Consistent with the requirements of Roberts v. Roberts, supra, the record also sustains the view that during the period of separation the first wife remained faithful to her family responsibilities and that in actuality, her husband had no ground upon which he would have been entitled to a divorce. Certainly, there is not evident any ground for divorce which would be recognized as such under the laws of Florida. In addition, it is shown that during the entire 33 years of separation the first wife resided in the same county where the parties lived when Keller deserted her. If he had instituted a divorce by constructive service reasonable inquiry would have revealed her whereabouts. This would have been essential to support the validity of any divorce obtained on constructive service." (Emphasis supplied.) (pp. 261-262)
*295 The record in the case sub judice is absolutely clear that the first wife deserted her husband and he had no contact with her for more than ten years. In fact, her whereabouts were unknown to him. Although it is not necessary for the first wife to show that the husband had no ground on which to seek a divorce, this fact has been accepted as relevant in showing the absence of a divorce. By the same token, the presence of grounds for divorce should be given great consideration by the Court in weighing the evidence seeking to overcome the presumption of the validity of the second marriage.
When the existence of the grounds for divorce is considered in connection with the statements of Carl Yohn that he was not married, his affidavit that he was divorced from his first wife, the absence of the first wife for more than ten years, her whereabouts being unknown, together with the fact that he was a seaman and employed in states other than the State of Florida, and the absence of certificates showing no divorce in Mississippi and Illinois, it is apparent that the trial court was justified in finding that the second wife was the lawful wife of decedent at the time of his death. The evidence when weighed collectively does not establish the absence of a reasonable probability that Carl Yohn actually secured a divorce. The burden of overcoming the presumption of validity of the second marriage was upon the first wife, even though she was required to prove a negative. J.J. Cater Furniture Co. v. Banks, 152 Fla. 377, 11 So.2d 776 (1943).
It is elementary that the theories or reasons assigned by the lower court as its basis for the order or judgment appealed from, although sometimes helpful, are not in any way controlling on appeal and the Appellate Court will make its own determination as to the correctness of the decision of the lower court, regardless of the reasons or theories assigned therefor. Therefore, if the lower court assigns an erroneous reason for its decision the decision will be affirmed where there is some other different reason or basis to support it. See cases cited, 1 F.L.P., Appeals, § 148. Although the evidence may have been insufficient to invalidate the first ceremonial marriage to Myrtle Paul because of the failure to show a purported prior existence of a common-law marriage, the strong presumption existing in favor of the validity of the second ceremonial marriage to Margaret has not been overcome by Myrtle Paul.
The order finding that Jackie Yohn, or Jack Bert Yohn, is the son and heir-at-law of the decedent and entitled as such to participate in the distribution of the estate was not questioned on appeal.
That portion of the opinion of the District Court holding that the first wife Myrtle Paul was the lawful wife of the decedent and now the widow entitled to share in the assets of his estate is quashed.
This cause is remanded to the District Court of Appeal with instructions that the orders of the County Judge of Escambia County, Florida, be
Affirmed.
ERVIN, C.J., and THORNAL and CARLTON, JJ., concur.
BOYD, J., concurs specially with opinion.
BOYD, Justice (specially concurring).
When Margaret Yohn, who had lived with the deceased for several months before his death produced proof that she had been formally married to him, this created a presumption she was the lawful widow and entitled to a portion of the estate as prescribed by statute.
When Myrtle Yohn proved she entered a ceremonial marriage with the deceased in 1955 in Mississippi and swore she was legally qualified to enter such marriage and *296 that she had not been divorced from him, the presumption favoring Margaret Yohn, the more recent wife, vanished. The burden of proof then shifted to Margaret Yohn to prove her marriage to be legally sufficient and to have a status superior to Myrtle Yohn's. This could have been done by proving Carl Yohn had been legally divorced from Myrtle before Margaret's marriage to Carl Yohn or by establishing that the 1955 marriage of Carl to Myrtle was invalid because one or both were already legally married at the time and thus unable to acquire a new spouse. Margaret prevailed because there was ample proof to establish Myrtle had become the wife of one James Johnson by a common law relationship sometime before marrying Carl Yohn. This common law marriage to Johnson was not terminated by divorce.
Myrtle and one James Johnson had lived together for about six or eight weeks, renting a house and otherwise representing to relatives and friends they had established a common law marriage. This common law marriage to Johnson was not terminated by divorce prior to Myrtle's "marriage" to Carl Yohn.
Since the 1955 marriage to Myrtle was invalid, the 1966 marriage to Margaret was valid and was controlling here. Carl was legally qualified to marry Margaret only because his marriage to Myrtle was void due to her being the wife of Johnson at the time she married Yohn. Her abandonment of the marriage and failure to communicate were wholly immaterial in determining her interest here.
The institution of marriage has been a cornerstone of western civilization for thousands of years and is the most important type of contract ever formed. When courts construe contracts of marriage, great care and caution must be exercised to preserve both rights of the family involved and the public generally.
A legal marriage can be terminated only by divorce, annulment or death of one of the marriage partners. It cannot be dissolved by abandonment of it by either or both partners. The reason for this is that the State is a party to the formation of a marriage and must consent before the husband and wife may be released from it.
When a person presents proof of a valid marrige to the deceased which is prior to another marriage of a third person to the same deceased person, I feel the one claiming under the later marriage should have the burden of proving a superior status by showing the prior marriage was either dissolved by divorce or annulment or that it was invalid from the beginning because the parties were not legally able to enter such marriage contract.