470 So.2d 48 (1985)
In re ESTATE OF Gregorio Armando PEREZ, Deceased.
Amanda Perez LOPEZ and Julia Perez, Appellants,
v.
Elsa Lopez PEREZ, Appellee.
No. 84-719.
District Court of Appeal of Florida, Third District.
May 21, 1985.
Rehearing Denied June 24, 1985.
*49 Horton, Perse & Ginsberg and Mallory H. Horton, Simon, Schindler & Hurst and Thomas Martin Pflaum, Miami, for appellants.
Pestcoe, Slotnick & Garcia and Michael Slotnick, Coral Gables, for appellee.
Before SCHWARTZ, C.J., and BASKIN and FERGUSON, JJ.
FERGUSON, Judge.
Amanda Perez Lopez and Julia Perez appeal from an order declaring the marriage of Elsa Lopez Perez to decedent Gregorio Armando Perez to be valid, revoking letters of administration issued to Amanda, and appointing Elsa the personal representative of Gregorio's estate.
Gregorio died intestate in November, 1983. Amanda, who is the daughter of Gregorio and his first wife Julia, was appointed personal representative of Gregorio's estate and letters of administration were issued to her by the trial court. Elsa became involved in the proceedings when she moved to be substituted for Amanda as the personal representative, asserting that she was the decedent's lawful wife based on a 1981 Peruvian marriage certificate.
The question we address is whether Julia, first wife of the decedent, presented sufficient evidence to overcome the presumption of the validity of the second marriage to Elsa.
Julia married Gregorio in 1949 in the province of Mantanzas, Cuba. Their child, Amanda, was born in 1950. The family came to the United States in 1961 and lived for nine months in Dallas, Texas. The parties thereafter established residence in Dade County, Florida. Gregorio's import/export business required him to travel extensively throughout the world, especially in Latin America. He maintained offices in Lima, Panama and purportedly in Mexico City as well. Gregorio supported Julia until his death and lived with her when he was not traveling abroad.
Elsa married Gregorio in Peru in 1981. According to Elsa, Gregorio had told her that he was divorced. On the Peruvian marriage certificate, however, Gregorio indicated that he had never been married. He also misrepresented himself as a Cuban national even though he and Julia had acquired United States citizenship. Gregorio and Elsa were married in both a civil ceremony and a Catholic church ceremony, the latter being impermissible for a divorced individual without a special dispensation from the church. Gregorio and Elsa maintained two residences, one in Lima, Peru, and the other in Trujillo, Peru.
After Gregorio died in 1983 and Amanda was appointed personal representative of his estate, Elsa subsequently appeared and sought to be substituted as personal representative. A trial was conducted to determine which of the women was Gregorio's lawful wife at the time of his death.
In order to rebut the common law presumption of validity attaching to a second marriage, Julia testified that she never received notice of a divorce proceeding filed against her in any jurisdiction and that Gregorio had held himself out as her husband until he died. Julia introduced as evidence "no-divorce" certificates from Florida and Texas where she and Gregorio had maintained marital residences. She also introduced a certificate from the civil registry of the South District of Mantanzas, Cuba, dated December 15, 1959, setting forth the date of Gregorio's birth and of his marriage to Julia. A former attorney from Cuba testified that marriages and divorces, if they occurred anywhere in Cuba, would be recorded on the certificate. Finally, Julia presented the testimony of a Peruvian attorney to the effect that it would not be possible to obtain a divorce in Peru without the wife's participation, and further that because Peru has no central registry, one would have to check the records of each province to determine if an individual has obtained a divorce in Peru. The trial court expressed reluctance as to the fairness of the result but entered an order finding that Elsa was the lawful wife of the decedent based on what he determined to be the requirements of law.
*50 Julia and Amanda appeal from that order, contending alternatively that (1) this court should recede from the case law attaching a presumption of validity to the second marriage as applied to the unique factual situation where the decedent has lived abroad and traveled extensively, or (2) that the evidence presented by Julia adequately discharged her burden of proof in rebutting the presumption of validity attaching to the second marriage.
It is said the presumption of validity that attaches to a second marriage is one of the strongest presumptions known to the law. Teel v. Nolen Brown Motors, Inc., 93 So.2d 874, 876 (Fla. 1957); Perkins v. Richards Constructors, Inc., 111 So.2d 494, 496 (Fla. 2d DCA 1959). The Teel court defined the burden of proof required to discharge this presumption:
While the alleged first wife is not required to eliminate every remote possibility that a divorce might have been secured by her husband, it is necessary that she tender evidence which when weighed collectively establishes the absence of a reasonable probability that her husband actually secured the divorce.

93 So.2d at 876. [e.s.] More specifically, a first wife must show that no divorce was issued in any of the counties in which the husband lived. Roberts v. Roberts, 124 Fla. 116, 167 So. 808 (1936).
The Florida Supreme Court has indeed held the spouse of a first marriage, who seeks to disprove a valid second marriage, to a strict requirement of an exhaustive search of the public records in each state where the other spouse resided. Teel, 93 So.2d 874 (burden not met); Perkins, 111 So.2d 494 (burden met). The two cases of King v. Keller illustrate that the fact that a decedent lived in many places does not relieve the first wife from searching the public records in every one of those places. In King v. Keller, 117 So.2d 726 (Fla. 1960), the first wife produced "no-divorce" statements from several states and counties where the decedent had lived, including municipalities in South Carolina, Louisiana, Ohio, Florida, Washington, and California. The second wife testified, however, that the deceased told her he had also lived in Oregon, Mexico, Pennsylvania, Arizona, Canada, and Utah. Because the first wife did not produce certificates for all these states, the court held that she did not rebut the presumption, explaining:
It is not unreasonable to at least require respondent to obtain a certificate from the bureau of vital statistics for each state in which the evidence shows decedent resided subsequent to his separation from the respondent. Should any of those states not have a central recording office ... she should be required to secure such a certificate from any specific county therein in which there is evidence to show her husband resided.
Id. at 730. The case was remanded to allow the first wife to try again to overcome the presumption. The trial court found on remand that she again failed. In King v. Keller, 141 So.2d 259 (Fla. 1962), the supreme court reversed the finding and held that the wife had satisfied her burden by searching the public records in Florida and 41 other states, and in 150 counties in Ohio, Pennsylvania, and other states where the decedent traveled, and by producing either "no-divorce" certificates from those places or statements that the information was unobtainable.
In this case, Julia contends that because Gregorio traveled so extensively, it is patently unfair to require her to produce "no-divorce" certificates from every place he visited. Appellants thus refer to the presumption of validity as "a presumption ... gone mad," In re Findlay, 253 N.Y. 1, 13, 170 N.E. 471, 475 (1930) (Cardozo, J.), and insist that it is contrary to public policy in that it will discourage globe-trotting husbands from seeking divorces because there will be no need to do so. Appellee responds that Teel and King required the appellants to have produced "no-divorce" certificates from Panama, Mexico, the provinces of Lima and Trujillo in Peru, and *51 Cuba,[1] as well as from Texas and Florida. They contend further that the testimony of the Peruvian attorney that no divorce was possible in Peru without the wife's participation is not sufficient.
Although the Teel and King line of cases discuss the strict requirements for producing "no-divorce" certificates from every jurisdiction where the other spouse resided, none of the cases preclude the establishment of "the absence of a reasonable probability" that a divorce was obtained by other kinds of proof. Teel, 93 So.2d at 876. We agree with appellants that Gregorio's misrepresentations on the application for a Peruvian marriage certificate that he was never married and that he was a Cuban national rather than a long-time United States citizen support a strong inference that the first marriage had never been legally terminated.
While there exists no Florida authority for the proposition, a New York court in Fishman v. Fishman, 48 A.D.2d 876, 369 N.Y.S.2d 756 (1975), held on even lesser evidence of concealment:
[T]he record indicates that at the time of his marriage to plaintiff, defendant indicated, on the application for the marriage license, that it was to be his first marriage. This false information, submitted by defendant to the clerk of the Marriage License Bureau, compels the inference that his prior marriage had never been legally terminated and constitutes competent and independent circumstantial evidence of plaintiff's allegations.
369 N.Y.S.2d at 759. See also Dolan v. Celebrezze, 381 F.2d 231 (2d Cir.1967), and cases collected from the jurisdiction of New York.[2]
Our view is that Julia  in searching the records of Florida and Texas where she and Gregorio had maintained the marital domicile; in producing a certificate from Cuba which showed no record of a divorce; and by showing that in the country of the second marriage (Peru) Gregorio falsely claimed to have never before been married, omitted to place on official records that he was a long-time citizen of the United States, and was married in a Catholic ceremony which would not have been permitted for a divorced man  established "the absence of a reasonable probability that her husband actually secured the divorce," which is all that is required under the laws of this state. Teel, 93 So.2d at 876; see also Johnson v. Johnson, 51 So.2d 421, 422 (Fla. 1951).
Reversed.
NOTES
[1] There is no cross appeal on the point, but appellee objected to the expert testimony of an attorney trained in Cuba as to the procedure under Cuban law of recording marriages and divorces. The testimony was essentially that a record of all marriages and divorces is maintained in the place of birth. Thus, if Gregorio, who was born in Mantanzas, Cuba, had obtained a divorce anywhere in Cuba, the information would be reflected in the official records book kept in Mantanzas.

An objection was also directed to the admission into evidence of the certificate from the civil registry of Mantanzas indicating that no divorce from Julia had been obtained by Gregorio, on the ground that the document was not authenticated pursuant to section 90.902, Florida Statutes (1983). Appellee has not contended, however, that she was without an opportunity prior to trial to investigate the authenticity of the official document, thus the court could have treated the certificate as presumptively authenticated. See § 90.902(3)(b)2. There is no showing on this record that the trial court abused its discretion in allowing the testimony or the document into evidence.
[2] Some of the cases have held that the false representation alone in securing a license for a later marriage is sufficient to overcome the presumption. See cases collected in Dolan, 381 F.2d 231.