297 So.2d 310 (1974)
Pauline JABLONSKI a/k/a Pauline Altieri a/k/a Pauline Borzymowski, Appellant,
v.
Antoinette Altieri CAPUTO and Martha Thompson (Altieri), Appellees.
No. 73-281.
District Court of Appeal of Florida, Second District.
June 26, 1974.
On Rehearing July 19, 1974.
Gale K. Greene, Sarasota, and Daniel P. Hansen, Bradenton, for appellant.
Daryl J. Brown of Rosin, Abel & Band, Sarasota, for appellees.
GRIMES, Judge.
In order properly to set forth the basis of our disposition of this case, a detailed recitation of the pertinent facts is required. Jerry Altieri and Martha Thompson, residents of the State of New York, were married in 1925, but they separated after three months. In 1934 Jerry began living with Pauline Borzymowski. They lived together for many years without the benefit of formal ceremony but held themselves out as man and wife. In 1947, they moved from New York to Florida and acquired certain property in Sarasota. They took title in the name of "Jerry Altieri and Pauline Altieri, jointly." They erected a building on the property in which they operated *311 a tavern, and they also used it as their living quarters. In 1951, Jerry and Pauline made a trip to Connecticut where they were married in a formal ceremony.
The evidence reflects that Jerry and Martha ran into each other on several occasions after their separation. Martha testified that Jerry first told her that they were divorced and that he had been able to accomplish this without having papers served upon her. She assumed that she was divorced. A certificate of marriage from the State of New York was introduced into evidence which reflected that Martha had married Charles Brunette, Jr. in 1934. Martha said that this was only a "mock marriage" which had taken place at a party and that she never saw Brunette again. In 1951 she said Jerry told her that they weren't really divorced and that he was just living with Pauline. She said he tried to get her to come to Florida and live with him but she declined. The record reflects that Pauline never knew that Jerry had been married before, though there was no showing that she ever inquired of him concerning his marital status. Jerry died in 1954.
Jerry's sister was appointed administratrix of Jerry's estate. She then filed a partition suit seeking a one-half interest in the property. However, the suit was never prosecuted, and it lay dormant in the court file. Pauline continued to live on the property and operate the tavern. She married a man named Jablonski who later died. Presumably because the administratrix' complaint constituted a cloud on the title, Pauline filed a quiet title suit in 1971. Martha, along with Robert P. Rosin, who had recently been appointed administrator of Jerry's estate, defended on the theory that Pauline owned only a half interest, because Jerry and Martha had never been divorced. The court declared Martha to be the owner of an undivided one-half interest in the property, but denied her claim for an accounting of one-half the profits of the tavern because of laches. Pauline appeals.
The trial court reasoned that Pauline's relationship with Jerry was meretricious from its inception and continued as such until after the time that the property was acquired. Since Jerry already had a wife and since title was taken without the requisite words of survivorship, the court held that following Jerry's death, Pauline continued to own only the one-half interest which she had always owned since the time the property was acquired. The court ruled that Jerry's estate had no interest in the property because it was the "homestead" of Jerry Altieri and said that since there were no children, "his interest in the real property vested in the wife upon his death."
At the outset, under the lower court's theory of the case, we don't see how the property could be considered to be "homestead." Real property, or an interest therein, can only be homestead for the purpose of descent and distribution if it is owned by the head of a family residing on the property at the time of death. In re Estate of Van Meter, Fla.App.2d, 1968, 214 So.2d 639, affirmed, Fla. 1970, 231 So.2d 524. According to the rationale of the final judgment, the property would be vesting in one wife under homestead law and yet the family necessary to constitute a legal homestead would have been established by virtue of the decedent living with another wife.
Pauline relies primarily upon the cases of Alexander v. Colston, Fla. 1953, 66 So.2d 673, and Mason v. Mason, Fla.App. 3d, 1965, 174 So.2d 620. In each of these cases an innocent woman who survived a man to whom she was ceremonially married was held to be entitled to property acquired as tenants by the entirety subsequent to the ceremony, even though he had never been divorced from his first wife. We concur with the court below that these cases are not controlling because in the instant case there had been no ceremonial marriage of Pauline and Jerry at the time *312 the property was acquired and title to the property was not taken as husband and wife.
However, we believe the court erred in another particular. In the final analysis, the controlling issue in this case is whether Jerry was ever divorced from Martha. The court found that they had never been divorced. If this finding is correct, the final judgment is correct, subject to the property passing through Jerry's estate and hence to Martha by way of intestate succession rather than passing directly to Martha as homestead property.
The burden rests heavy upon one who attacks the validity of a second marriage on the basis that a prior marriage was never terminated. In passing on which of two women survived the decedent as his widow in a workmen's compensation matter, the Supreme Court in Teel v. Nolen Brown Motors, Fla. 1957, 93 So.2d 874, said:
"... A presumption exists in favor of the validity of the last marriage. We have held that this is one of the strongest presumptions known to the law. The burden of rebutting it rests upon the party attacking the legality of the last marriage. While the alleged first wife is not required to eliminate every remote possibility that a divorce might have been secured by her husband, it is necessary that she tender evidence which when weighed collectively establishes the absence of a reasonable probability that her husband actually secured the divorce.
"Conceivably there may be situations where the courts would necessarily have to rely on the uncorroborated testimony of the one attacking the second marriage. However, in this day of well-kept public records covering vital statistics, such as, births, marriages and divorces, we feel that to the extent possible the public records available should be exhausted in an effort to establish the fact of divorce or the absence of a divorce as the case may be. In this case, for example we judicially know that the State Bureau of Vital Statistics is the custodian of records that reflect the granting of divorces in every county in Florida. A similar agency exists in the State of Georgia, where the deceased employee in the instant case evidently resided for a considerable period of time. In order to eliminate the doubt as to the presence or lack of a divorce, and in order to discharge the burden placed upon her, we think the first wife should have exhausted a search of these public records. While her attorney testified that an examination of the records in Dade County reflected no divorce, the fact remains that the deceased could have obtained a divorce in any one of a number of Florida counties as well as in the State of Georgia. We, therefore, conclude that the deputy and the full Commission misconceived the legal effect of the uncontroverted testimony. This is so for the reason that the testimony was legally insufficient to overcome the presumption in favor of the validity of the second marriage... ."
See also In re Estate of Yohn, Fla. 1970, 238 So.2d 290.
In the instant case, there was no evidence from the records from any jurisdiction, even Sarasota County, pertaining to the absence of a divorce. The only evidence on the subject was the testimony of Martha which was equivocal. At least for a substantial period of time, even she thought she was divorced. Under the requirements of Teel, the evidence was far short of being sufficient to rebut "one of the strongest presumptions known to the law."
Even though this means that Jerry died leaving Pauline as his surviving widow, Pauline is not entitled to the property under the concept of entireties. Until she was ceremonially married, there was no second marriage upon which to hang the presumption, and she and Jerry took title prior to the ceremonial marriage. A purported *313 common law marriage could hardly raise the necessary presumption. Jerry's one-half interest in the property might ordinarily go through his estate except that at this point the trial court's finding that the property constituted homestead becomes proper. As a result of our decision, Jerry ended up dying as the head of a family consisting of Pauline who was his legal wife. Since Jerry had no children, Pauline acquired his half of the property upon his death.
The judgment is reversed.

ON PETITION FOR REHEARING
In our original opinion we explained how the outcome of this case turned upon whether or not Jerry Altieri had ever been divorced from Martha Thompson Altieri. We held that Martha failed to meet her burden of showing the absence of a divorce. Martha has now filed a petition for rehearing in which she asserts that it had been stipulated in the lower court that Jerry was never divorced from Martha. She asks that the record on appeal be supplemented by the inclusion of a pre-trial statement which suggests, somewhat equivocally, the existence of a stipulation to this effect. Recognizing that neither party seemed to pay much attention to this important point, this court nevertheless assumed that it was a viable issue below because the pleadings reflected a dispute and because counsel for Pauline said it was when asked at oral argument and Martha's counsel remained silent.
However, in view of the confusion and because of the possibility that the question of whether or not a divorce occurred was never really tried in the court below, we have decided to adopt the procedure followed in King v. Keller, Fla. 1960, 117 So.2d 726, and Roberts v. Roberts, 1936, 124 Fla. 116, 167 So. 808, in which the parties were permitted to submit further evidence on the point in question. In this way the true facts concerning the existence of a divorce can be determined.
Accordingly, this case is hereby remanded for the purpose of having a further hearing below at which time evidence may be submitted on the issue of whether or not Jerry and Martha were ever divorced. In line with the authorities cited in our original opinion, the burden of proving the absence of divorce shall be upon Martha. Following the introduction of such evidence as may be submitted, the trial court should enter a new judgment disposing of the half interest in the property according to the principles set forth in our original opinion.
MANN, C.J., and McNULTY, J., concur.