Lucille SMITH, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 82–5386.

United States Court of Appeals, Eleventh Circuit.

June 23, 1983.

R.A. Culbertson, Greater Orlando Area Legal Services, Inc., Orlando, Fla., for plaintiff-appellant.

Kendell W. Wherry, Robert W. Genzman, Asst. U.S. Attys., Orlando, Fla., for defendant-appellee.

Before KRAVITCH, HENDERSON and ANDERSON, Circuit Judges.

ALBERT J. HENDERSON, Circuit Judge:

The appellant, Lucille Smith, applied for Social Security widow's insurance benefits pursuant to the provisions of 42 U.S.C. § 402(e)(1) (1976).[1] The Secretary of

1. Section 202(e)(1) of the Social Security Act (42 U.S.C. § 402(e)(1) (1976)), relating to the payment of widow's insurance benefits provides in pertinent part:

Health and Human Services (Secretary) denied her claim on the ground that she was not legally the deceased wage earner's wife because she had not dissolved a previous common law marriage. She then sought judicial review [2] in the United States District Court for the Middle District of Florida, Orlando Division, which upheld the Secretary's decision. Finding that the Secretary and the district court applied an incorrect legal standard, we reverse.

In 1938, Lucille began dating one Darryl Knight in Alabama. Out of this eight-year relationship were born five children whose birth certificates list Knight as the father. No marriage ceremony was performed, and there is conflicting evidence as to whether they actually lived under the same roof. Lucille and Knight separated in the mid-1940's. Thereafter, in 1949, Lucille began cohabiting with Yarbrough Smith in Florida. Lucille used the name Smith, and the community regarded the couple as husband and wife. They bore a son. They also purchased insurance, filed joint tax returns, and conducted business transactions as a married couple. When Smith filed for retirement benefits in 1968, he listed Lucille as his wife. Their relationship continued until Yarbrough Smith's death in 1975. Believing that she was entitled to Social Security insurance benefits as Smith's widow, Lucille filed a claim in 1979. After a hearing before an Administrative Law Judge (ALJ), her application was denied on the ground that her common law marriage to Smith was invalid because of a prior undissolved common law marriage to Knight.

■ On appeal, in reviewing a denial of Social Security benefits, this court may not reweigh the evidence nor substitute its judgment for that of the Secretary. *Millet v. Schweiker,* 662 F.2d 1199 (5th Cir.1981); *Smallwood v. Schweiker,* 681 F.2d 1349 (11th Cir.1982). This deferential standard of review applies only to findings of fact, however, and "no similar presumption of validity attaches to the Secretary's conclusions of law, including the determination of proper standards to be applied in reviewing claims." *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982). Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal. *Id.*

■ The appropriate criterion for evaluating a claimant's eligibility for widow's insurance benefits is determined according to the law of the insured's domicile at the time of his death.[3] Therefore, Lucille's marital status at the time of Smith's death must be analyzed in accordance with Florida law. In Florida, it is firmly established that when the validity of a subsequent marriage is challenged, as against a previous one of the same person, "one of the strongest presumptions in the law exists in favor of the validity of the last marriage," wheth-

---

"(1) The widow (as defined in section 216(c)) [*see* n. 3] ... of an individual who died a fully insured individual, if such widow ...
    (A) is not married
    (B)(i) has attained age 60, or ...
    (C)(i) has filed application for widow's insurance benefits ..., and
    (D) is not entitled to old-age insurance benefits

.     .     .     .     .

shall be entitled to a widow's insurance benefit ..."

2. Judicial review is available pursuant to the provisions of 42 U.S.C. § 405(g) (1976).

3. 42 U.S.C. § 416(h)(1) (1976) provides:
    (A) An applicant is the wife [or] widow ... of a fully insured individual for purposes of this title if the courts of the State in which such insured individual is domiciled at the time such applicant files an application, or, if such insured individual is dead, the courts of the State in which he was domiciled at the time of death, ... would find that such applicant and such insured individual were validly married at the time such applicant files such application or, if such insured individual is dead, at the time he died. If such courts would not find that such applicant and such insured individual were validly married at such time, such application shall, nevertheless be deemed to be the wife [or widow], ... as the case may be, of such insured individual if such applicant would, under the laws applied by such courts in determining the devolution of intestate personal property, have the same status with respect to the taking of such property as a wife [or] widow ... of such insured individual.

er the marriage was ceremonial or by common law. 25 Fla.Jur.2d Family Law §§ 45, 47 at 66–67 (1981); *Teel v. Nolan Brown Motors,* 93 So.2d 874 (Fla.1957); *In re Estate of Lee,* 360 So.2d 1111 (Fla.Dist.Ct. App.1978); *McBride v. McBride,* 130 So.2d 302 (Fla.Dist.Ct.App.1961). This presumption outweighs the assumed continuation of the previous marriage, and the party attacking the validity of the second marriage bears the burden of proving that a first marriage nullifies the second one.[4] Moreover, the degree of proof required to overcome the presumption is "clear and convincing evidence." *In re Hind's Estate,* 135 So.2d 13, 15 (Fla.Dist.Ct.App.1961). Therefore, under Florida law, Lucille is presumed to be Smith's widow unless there is clear and convincing evidence in the record to prove that Lucille was married to Darryl Knight and that her marriage to him was never terminated by death or legal action. Although the administrative order briefly acknowledged Florida's presumption in favor of the second marriage, Record at 20, 22, this court is not satisfied that the ALJ applied that rule to the facts of this case.

■ First, it can hardly be said that the evidence of Lucille's marriage to Knight is clear and convincing. Their union was allegedly a common law marriage, and Florida would recognize such a marriage if it

were considered valid in Alabama, where the relationship was established. *Young v. Viruet de Garcia,* 172 So.2d 243 (Fla.1965). Alabama courts have stated that "[w]hen the relation between a man and a woman living together is illicit in its commencement, it is presumed to so continue" until there is proof that the parties were married. *Gilbreath v. Lewis,* 242 Ala. 510, 7 So.2d 485, 488 (Ala.1942); *Prince v. Edwards,* 175 Ala. 532, 57 So. 714 (1912). Common law marriage is recognized in Alabama if the parties mutually consent to enter into a husband and wife relationship that will be "permanent and exclusive of all others." Their agreement "must be followed by public recognition of the existence of the 'marriage' and cohabitation or mutual assumption openly of marital duties and obligations." *Skipworth v. Skipworth,* 360 So.2d 975, 976–77 (Ala.1978); *White v. Hill,* 176 Ala. 480, 58 So. 444 (1912); *Tartt et al. v. Negus,* 127 Ala. 301, 28 So. 713 (1900).

There is no evidence in the record that Lucille and Darryl Knight ever agreed to hold themselves out as husband and wife.[5] When Lucille applied for widow's benefits in 1979, she submitted a signed statement asserting that although she had borne Darryl Knight's children, she had never lived with him and had never considered him as her husband. However, on an earlier appli-

---

4. In a summary of Florida law on this point, 25 Fla.Jur.2d Family Law § 47 states:

As to the validity of a subsequent as against a previous marriage of the same person, the second or subsequent marriage is presumed to be valid. Such presumption is stronger than, and overcomes or rebuts, the presumption of the continuance of the previous marriage, and the burden of proving the continuance of the previous marriage and the invalidity of the second marriage is on the party attacking the validity of the subsequent marriage. In other words, the presumption of the continuance of a previous marriage in itself is not equal in probative force to the presumption of the validity of the subsequent marriage. Thus, it is presumed, in favor of the validity of the subsequent marriage, that the previous marriage has been dissolved by death or legal action. (Citations omitted). *See also, In re Hind's Estate,* 135 So.2d 13, 15 (Fla.Dist.Ct.App.1961), where the court stated

with respect to a wife's two common law marriages,

In the case of conflicting marriages contracted by the same spouse, the presumption of validity operates in favor of the second marriage. Accordingly, the burden of showing the validity of the first marriage is on the party asserting it, and even where this is established it may be presumed in favor of the second marriage that at the time thereof the first marriage had been dissolved either by decree of divorce or by death of the former spouse, so as to cast the burden of adducing evidence to the contrary on the party attacking the second marriage.

(Quoting *Roberts v. Roberts,* 124 Fla. 116, 167 So. 808, 809 (1936)).

5. *See, e.g.,* Transcript of Administrative Hearing at 48, where Lucille stated that she never consented to a marital relationship with Knight.

cation for insurance benefits,[6] Lucille had indicated that she was previously married to "Darry Knight" and that the marriage was "not ended". The explanation on the form added, "I didn't ever divorce Darry Knight. I was never served divorce papers. He went away and I heard he was remarried, so I thought I could remarry, too. He left over 20 years ago." Record at 63. At the administrative hearing on February 5, 1980, the ALJ asked Lucille to explain her earlier inconsistent statement, and she responded,

> [W]ell, I didn't really state that [I had been married to Knight] ... the lady when I went first to apply for it she told me that I had had these children by Darrell Knight (sic), she figured that she said that you and him could have had a marriage relationship and I told her we didn't and so she told me to go back and get in contact with Darrell Knight and see did we have a marriage. But, I told her, I kept telling her we didn't. So that's why I had to go back and get in contact with him.

Record at 36–37. When notified, Knight wrote to Lucille, "I do not know why after 40 years you write me and ask for information stating that we were not married. And you know for yourself we were not." Record at 123.

The evidence is also unclear as to whether Lucille and Knight cohabited as a married couple. Knight asserted that they only stayed together on weekends. Record at 118. Lucille's sister and children also stated that the couple lived apart, and that Lucille resided at her parents' home. Record at 129; 132–35. On the other hand, Knight's mother, Tommie Knight, indicated that she believed that the couple was married and that her son supported Lucille's children.[7] Darryl Knight did acknowledge paternity of the five children who bore his surname. Paternity is not, however, sufficient grounds to infer the existence of a marriage. See, Gilbreath v. Lewis, 7 So.2d 485 (Ala.1942).

Despite such contradictory and inconclusive evidence, the ALJ determined that Lucille and Darryl Knight were married. The ALJ stated that Florida's presumption of the validity of the second marriage "may be rebutted by evidence establishing the existence of a prior undissolved marriage." Record at 32. He simply reasoned that because there was no evidence of divorce or annulment, the "presumption of the validity of the claimant's present common-law marriage has been effectively rebutted by evidence establishing that she is still married to Darryl Knight." Record at 34. Because that statement ignores the full impact of Florida law on this case, this court is unable to conclude the ALJ followed the correct legal standard. Nowhere in his order does the ALJ acknowledge that the presumption favoring the second marriage is not only "one of the strongest in the law" of Florida, but it is so strong, in fact, that it overcomes the presumed continuation of the first marriage. Nor does the ALJ mention that the burden is on the party attacking the validity of the second marriage to prove by clear and convincing evidence the existence of the first marriage and the absence of a dissolution.

Thus, there are two basic infirmities in the ALJ's decision. First, as stated, the evidence of Lucille and Darryl Knight's marriage hardly rises to a clear and convincing level; the ALJ did not even label it as such. Second, the Social Security Administration bore the affirmative burden of showing that the first marriage had not ended,[8] and the record does not indicate

---

**6.** On August 9, 1968, Lucille filed an application for wife's medical insurance benefits based on her putative marriage to Yarbrough Smith. Record at 60–63. He simultaneously filed a corroborative claim which named Lucille as his wife. Record at 56–59.

**7.** Record at 124–25. Mrs. Tommie Knight's credibility was attacked by her own grandchild

and by Lucille on the grounds that Mrs. Knight was 86 years old and infirm, and that she confused her son's present wife with Lucille. Record at 127.

**8.** See McBride v. McBride, 130 So.2d 302 (Fla. Dist.Ct.App.1961), where the court rejected a contention similar to the view seemingly espoused by the ALJ in this case. The McBride

that this burden was met. The Florida courts have frequently reiterated that "all public records available should be exhausted in an effort to establish the fact of the absence of a divorce." *In re Estate of Lee,* 360 So.2d 1111 (Fla.Dist.Ct.App.1978); *Jablonski v. Caputo,* 297 So.2d 310 (Fla.Dist.Ct. App.1974); *King v. Keller,* 117 So.2d 726 (Fla.1960). In *Jablonski,* the court stated,

> The burden rests heavy upon one who attacks the validity of a second marriage on the basis that a prior marriage was never terminated.

> .     .     .     .     .

> [I]n this day of well-kept public records covering vital statistics, such as, births, marriages and divorces, we feel that to the extent possible the public records available should be exhausted in an effort to establish the fact of divorce or the absence of a divorce as the case may be. In this case, for example we judicially know that the State Bureau of Vital Statistics is the custodian of records that reflect the granting of divorces in every county in Florida. A similar agency exists in the State of Georgia, where the deceased employee in the instant case evidently resided for a considerable period of time. In order to eliminate the doubt as to the presence or lack of a divorce, and in order to discharge the burden placed upon her, we think the first wife should have exhausted a search of these public records.

We, therefore, conclude that the deputy and the full Commission misconceived the legal effect of the uncontroverted testimony. This is so for the reason that the testimony was legally insufficient to overcome the presumption in favor of the validity of the second marriage. . . .

*Id.* 297 So.2d at 312.

Similarly, in this case, Lucille's testimony that she and Knight were not divorced is "legally insufficient" to overcome the presumption in favor of the validity of her marriage to Smith. The administrative file reflects that a claim's examiner did search, to no avail, for an official record of Lucille and Yarbrough Smith's marriage. Thus, it does not seem unduly burdensome to require the Social Security Administration to comply further with the clearly expressed dictates of Florida law. The agency should produce a certificate of search from the bureaus of vital statistics where Darryl Knight might have obtained a divorce.[9]

The ALJ did not give proper effect to Florida law in this instance. The record does not provide a sufficient basis to determine that the agency's decision was grounded on the clear and convincing evidence necessary to override the presumptive validity of Lucille and Yarbrough Smith's marriage.[10]

Accordingly, we REVERSE and REMAND to the district court for proceedings consistent with this opinion.

---

court stated, "Appellant Jacob takes the position that there was sufficient evidence to establish existence of the common-law marriage and that the burden therefore shifted to Ola Mae to prove the non-existence thereof. However, appellant overlooks the rule that there is *presumption in favor of the validity of a second* marriage and when one seeks to overcome such presumption the burden rests upon him." *Id.* at 303–04.

**9.** In light of Florida's strong public policy in this area, we find it necessary to require compliance with the evidentiary standards announced by that state's judiciary. We acknowledge that it is extremely unlikely that a divorce decree was ever obtained or recorded. We find it similarly dubious, however, that a true common-law marriage was ever contracted between Lucille and Darryl Knight.

**10.** The validity of the second marriage is presumed, and it is not necessary to analyze it unless or until the Social Security Administration meets its burden of disproving the first putative marriage. We simply note that prior to January 1, 1968, Florida sanctioned common-law marriages, but the Florida legislature has declared common-law marriages contracted after that date to be void. Fla.Stat. § 741.-211 (1979).