28 F.3d 113
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Gary G. LOHSE, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Department of Health and
Human Services, Defendant-Appellee.
 No. 061694.
 United States Court of Appeals,
Tenth Circuit.
 June 16, 1994.
 
 Before LOGAN, SETH, and BARRETT, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Gary Lohse appeals the district court's decision affirming the Secretary's denial of his application for social security insurance benefits. The Secretary determined that plaintiff, who has degenerative disc disease, could return to his past relevant work as a security guard or a bank guard, as those jobs are performed in the national economy. On appeal, plaintiff contends that the Secretary failed to develop the record concerning both the requirements of his past relevant work and his mental state, that the Secretary's decision was not supported by substantial evidence, and that the district court erred in refusing to remand the action to the Secretary pursuant to 42 U.S.C. 405(g) to consider the report of Dr. Brian Lambden, which plaintiff obtained after the Secretary's final decision. We reverse and remand for further proceedings.
 
 
 3
 "We review the Secretary's decision to determine whether [her] findings are supported by substantial evidence in the record and whether [she] applied the correct legal standards." Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir.1991). Because " '[s]ubstantiality of evidence must be based upon the record taken as a whole,' " Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir.1983) (quoting Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980)), we must "meticulously examine the record," ---- id. at 414, to determine whether the evidence in support of the Secretary's decision is substantial and "take into account whatever in the record fairly detracts from its weight," Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir.1984). " 'Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.' " Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir.1983)).
 
 
 4
 Plaintiff injured his back in September 1988 while working as a security guard/patrolman at the Denver Technological Center, a large office complex. He was treated conservatively and recovered sufficiently to return to work a few days later. Plaintiff was laid off in September 1989, allegedly because his back pain prevented him from performing his job. Plaintiff attempted to work as a bank guard in the fall of 1990, but was able to work for only a brief period of time due to his alleged back pain.
 
 
 5
 Following his discharge from employment in 1989, plaintiff was treated by Dr. Kemp, an orthopedic surgeon. In April 1990, Dr. Kemp stated his opinion that in light of his residual back pain, claimant could perform sedentary or light work that did not require lifting more than thirty to forty pounds, bending at the waist with twisting more than three to five times an hour, or driving a motor vehicle more than two hours out of an eight-hour work day.
 
 
 6
 Plaintiff was examined by Dr. Goldberg, another orthopedic surgeon, in April 1990, to obtain a second opinion. Dr. Goldberg ordered lab tests and an MRI of plaintiff's lumbosacral and mid and lower thoracic spine. Dr. Goldberg stated his opinion that plaintiff was unable to do any work requiring sitting, such as sitting in a patrol car, but was otherwise "fit to perform generally light work, mostly of an office nature, where he can get up and move about frequently to try to relieve himself of his low back pain." App. at 157.
 
 
 7
 In connection with his worker's compensation claim, plaintiff was sent to Health South Rehabilitation Center (HSRC) for an extensive evaluation of his work-related capacities in June 1990. Martin J. Trumball, O.T.R., and Caroline Corning, R.P.T., prepared a lengthy report, accompanied by test results, discussing plaintiff's ability to work. They stated their opinion that plaintiff had a limited ability to sit for more than forty minutes, to stand for more than ten minutes, or to climb more than two flights of stairs. They also stated that plaintiff should not "involve himself in [the] physical restraint of another human being as a part of his work." Id. at 171.
 
 
 8
 Plaintiff's disability report reflected that he worked as a bank security guard from 1975 to 1980, a police officer from 1980 to 1981, a deputy sheriff from 1981 to 1982, and a security guard/patrolman from 1982 to 1989. The most recent occupation involved three separate jobs, the last of which was at the Denver Technological Center. The ALJ concluded that plaintiff's past relevant work as a police officer would be "too strenuous given his current functional capacity," but that he could perform his past relevant work as a security guard or a bank guard because those jobs, as generally performed in the national economy, "do not require lifting in excess of 20 pounds and no repetitive bending is necessary." Id. at 39.
 
 
 9
 A claimant will not be considered disabled if he can perform either the actual functional demands and duties of his past relevant work or the functional demands and duties of that work as it is usually performed in the national economy. Social Security Ruling 82-61; Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1050-51 (10th Cir.1993).
 
 
 10
 In the disability report, plaintiff described his basic duties as follows:
 
 
 11
 Law Enforcement/Security duties involved patrolling in car, use of firearms, much standing, some lifting, physically handling prisoners/offenders, report writing included rounds checks, reports of incidents, etc., supervisory included filling in for Security Managers/Chiefs (up to 6-8 people), filling out time cards, making up schedules, etc.
 
 
 12
 Patrolling was to check grounds or streets for legal offenders and then write out tickets for same.
 
 
 13
 Patrol work could include high speed chases, physically chasing offenders to take into custody.
 
 
 14
 App. at 92. In the disability report section inquiring about the physical activities of his past relevant work, plaintiff indicated that it involved one hour of walking, zero hours of standing, seven hours of sitting in a patrol car, and occasional bending, reaching, and lifting.
 
 
 15
 Plaintiff described his past relevant work in a similar fashion in the vocational report, except he stated that he sat only six hours a day and that his job as a bank guard required four hours of walking and three hours of standing in an eight-hour day, as well as occasional bending and frequent lifting and carrying of up to twenty-five pounds. In the "Remarks" section of the vocational report, plaintiff added: "All of the jobs I had required good physical condition--restraint--driving--[indecipherable]." ---- Id. at 101. Plaintiff told the HSRC that his work at the Denver Technological Center required lifting no more than ten pounds and constant sitting. He also said he could potentially be involved in restraining another person.
 
 
 16
 At the hearing before the administrative law judge (ALJ), plaintiff did not discuss the specific requirements of his past relevant work,[2] and the ALJ did not inquire into the matter. Even when a claimant is represented at the hearing by counsel, as here, the ALJ has a duty to develop the record sufficiently to make findings concerning the claimant's residual functional capacity, the physical and mental requirements of the claimant's past relevant work, and the claimant's ability to return to that past relevant work given his or her residual functional capacity. Social Security Ruling 82-62; Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir.1993). When the ALJ relies on a job description in the Dictionary of Occupational Titles[3] to determine how that job is usually performed in the national economy, see Social Security Ruling 82-61, the ALJ must develop the record concerning the requirements of the claimant's past relevant work sufficiently to ascertain what job listing in the Dictionary of Occupational Titles matches the claimant's past relevant work. If the vocational and disability reports the claimant submits are not sufficient to match the claimant's past relevant work with a job description in the Dictionary of Occupational Titles, then the ALJ must develop testimony from the claimant at the hearing or obtain further information from the claimant's employers.
 
 
 17
 The ALJ's failure to elicit testimony from plaintiff concerning his past relevant work is particularly troublesome here because the other evidence in the record concerning that work is inconsistent. For instance, plaintiff stated in the narrative portion of the disability report that his past work required "much standing," App. at 92, yet indicated in the next portion of the report that his work required zero hours of standing. Further, plaintiff stated in the "Remarks" section of the disability report that all his past jobs required driving, yet did not indicate any sitting time associated with his bank guard job in the vocational report.
 
 
 18
 Even with these inconsistencies, the medical evidence establishes that plaintiff could not perform the actual duties of his past relevant work as a security guard/patrolman. The reports of Dr. Kemp, Dr. Goldberg, and the HSRC indicate that plaintiff cannot sit for prolonged periods of time. Therefore, regardless of whether he sat for six or for seven hours in a patrol car, plaintiff could not perform this past work.
 
 
 19
 It is more difficult to determine whether plaintiff's physical limitations prevent him from performing his past relevant work as a bank guard because of the incomplete and inconsistent information concerning this job. If plaintiff's bank guard duties primarily involved walking and standing, rather than driving, then the medical evidence concerning his inability to sit would not rule out his ability to perform this work. Instead, the focus would be on plaintiff's ability to stand and walk for prolonged periods of time, which is addressed in the record only by plaintiff's testimony and the HSRC report. Plaintiff testified that he could stand for ten minutes and walk one block. Id. at 62. The HSRC report also stated that plaintiff had a limited ability to stand for more than ten minutes, but did not mention his ability to walk. The HSRC did address one other requirement of all plaintiff's past relevant work, namely, the necessity of apprehending and restraining miscreants. The report specifically stated that plaintiff should not be involved in the restraint of another person as part of his job. Id. at 171.
 
 
 20
 In deciding that plaintiff could return to his past relevant work, the ALJ purported to consider the requirements of those jobs as they are performed in the national economy, see ---- id. at 39, rather than the requirements of plaintiff's past relevant work as plaintiff related them. However, in doing so the ALJ did not refer to any vocational materials and did not have the benefit of testimony by a vocational expert. Although the ALJ may take administrative notice of information about the requirements of jobs as they are usually performed in the national economy, see 20 C.F.R. 404.1566(d), he did not identify the source of the information he relied upon in determining the requirements of plaintiff's past relevant work; therefore, we cannot properly review his ultimate determination that plaintiff can still perform that work.
 
 
 21
 In her brief on appeal, the Secretary suggests that reliance on the Dictionary of Occupational Titles is appropriate. See 20 C.F.R. 404.1566(d)(1) (providing that Secretary can take administrative notice of employment data contained in the Dictionary of Occupational Titles ); Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir.1990) (upholding Secretary's decision that claimant could return to past relevant work of bookkeeper as described in the Dictionary of Occupational Titles ). Based on the limited description of plaintiff's work contained in the record, either of two job descriptions in the Dictionary of Occupational Titles[4] may be relevant: security guard (Case 372.667-034) or merchant patroller (Case 372.667-038). The primary duties of both jobs are described in rather broad terms, such as "patrols," "inspects," and "examines." Id., Vol. I, at 269. Neither the Dictionary of Occupational Titles nor the Selected Characteristics[5] states whether these patrolling and inspection duties are performed primarily on foot, which may require prolonged walking and standing, or by motor vehicle, which may require prolonged sitting. In some instances, such a deficiency in the vocational materials would not be problematic. Here, however, we know that the security guard/patroller work that plaintiff actually performed required prolonged sitting and that he can no longer tolerate this activity. Under the circumstances, the description of the job duties in the Dictionary of Occupational Titles is not specific enough for the ALJ to determine whether plaintiff can perform his past relevant work as those jobs are usually performed in the national economy.
 
 
 22
 The Secretary has recognized that "[in] those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert." Social Security Ruling 82-61. The assistance of a vocational expert to supplement and explain the information contained in the Dictionary of Occupational Titles is needed here so that the ALJ can reach a reasoned decision whether plaintiff's inability to sit for prolonged periods of time precludes him from performing those jobs.[6]
 
 
 23
 If, on remand, the vocational evidence establishes that plaintiff's past relevant work as usually performed in the national economy does not involve prolonged sitting, but rather walking and standing, then the ALJ must consider whether plaintiff has the ability to walk and stand as required. In the instant case, neither Dr. Kemp nor Dr. Goldberg addressed the effect of plaintiff's back problems on his ability to stand or walk. The only affirmative evidence in the record on these issues indicates that plaintiff cannot stand for more than ten minutes or walk more than one block. The ALJ did not address this evidence or otherwise discuss plaintiff's ability to walk and stand for prolonged periods of time. He should do so on remand.
 
 
 24
 Further, the duties of a security guard as described in the Dictionary of Occupational Titles include "apprehend[ing] and expel[ling] miscreants," and the duties of a merchant patroller include "[a]pprehending unauthorized persons." Id., Vol. I, at 269. The HSRC report, however, indicated that plaintiff should not be involved in restraining people as part of his job. The ALJ did not discuss this aspect of plaintiff's past relevant work.
 
 
 25
 We recognize that the Secretary does not consider a physical therapist an acceptable medical source, see 20 C.F.R. 404.1513, and, therefore, the report from the HSRC is entitled to less weight than the opinions of the physicians who saw plaintiff. Cf. Walker v. Shalala, 993 F.2d 630, 632 n. 2 (8th Cir.1993) (noting that opinions of chiropractors, who are not an acceptable medical source as defined in 404.1513, are accorded less weight than opinions of medical doctors). We note, however, that plaintiff was sent to the HSRC for the specific purpose of obtaining an evaluation of his physical ability to work, and that the HSRC report constitutes the only evidence from a health care provider concerning some of the physical abilities that are relevant to plaintiff's ability to perform his past relevant work.
 
 
 26
 When discussing plaintiff's ability to perform his past relevant work given his physical limitations, the only abilities the ALJ mentioned were ones that Dr. Kemp and Dr. Goldberg discussed in their reports; the ALJ did not mention any of the other abilities that were discussed in the HSRC report. Thus, the record does not reveal whether the ALJ considered but rejected the HSRC report, or whether he simply overlooked it.
 
 
 27
 In sum, the ALJ failed to develop a clear record concerning the requirements of plaintiff's past relevant work as he actually performed it and the requirements of that work as usually performed in the national economy. Further, the ALJ failed to relate the requirements of plaintiff's past relevant work to his ability to perform basic work activities, including his ability to sit, stand, or walk for extended periods of time. Finally, the ALJ failed to consider plaintiff's ability to apprehend and restrain people, a somewhat unusual requirement of these otherwise "light" jobs. Therefore, we must reverse the Secretary's decision denying plaintiff benefits and remand the action for further proceedings before the Secretary.
 
 
 28
 In light of our remand, we need not address whether the district court abused its discretion in refusing to remand the case to the Secretary to consider the evidence contained in Dr. Lambden's report of April 1992. On remand, the Secretary should determine whether the medical evaluation of plaintiff by Dr. Lambden indicating, among other things, that plaintiff suffers from depression and a developing opioid dependence, would significantly alter her initial determination that plaintiff can return to his past relevant work. See Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir.1991). The Secretary also should consider whether the record concerning plaintiff's mental state should be developed further.
 
 
 29
 The judgment of the district court is REVERSED and the action is remanded with directions to remand to the Secretary for proceedings consistent with this order and judgment.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Although plaintiff did describe his duties as a bank guard during his brief employment in 1990, we agree with him that this job does not constitute past relevant work. Plaintiff testified that he worked only one day a week, eight hours a day, for about two months, and that he earned $6.00 or $6.50 per hour. Even at a rate of $6.50 per hour, plaintiff's monthly earnings would be less than $300.00. Therefore, his bank guard job would not qualify as substantial gainful activity, see 20 C.F.R. 1574(b)(3)(vii), and could not be considered past relevant work, see id. 404.1565(a); Jozefowicz v. Heckler, 811 F.2d 1352, 1355-56 (10th Cir.1987). Plaintiff's testimony did not reflect whether the bank guard duties he described in connection with his 1990 employment were similar to those he performed as a bank guard from 1974 to 1981
 
 
 [3]
 Employment & Training Admin., U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. rev.1991)
 
 
 [4]
 The ALJ's comments on the requirements of security guard and bank guard jobs as usually performed in the national economy suggest that he may have relied on information other than that contained in the Dictionary of Occupational Titles. In discussing plaintiff's ability to perform those jobs, the ALJ found:
 The security guard and bank guard jobs are clearly within the claimant's current functional capacity. As a matter of fact, they would be ideally suited for the claimant given his combined limitations. The security guard positions generally allow for change of position on a regular basis and guards can alternate position regularly since their duties are generally varied between sitting or standing in a guard station and making hourly rounds.
 App. at 39. The Dictionary of Occupational Titles, however, does not discuss the ability of security guards or bank guards to alternate their position regularly. See id., Vol. I, at 269.
 
 
 [5]
 Employment & Training Admin., U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (1993)
 
 
 [6]
 This holding is not inconsistent with those cases holding that vocational expert testimony is not required at step four of the sequential analysis to evaluate a claimant's ability to work. See, e.g., Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir.1992). Here, the vocational expert is not being called upon to give an expert opinion as to whether plaintiff can work in light of his physical or mental limitations and his vocational factors (i.e., age, education, and work experience). Rather, the vocational expert is being called upon solely to explain how plaintiff's past relevant work is performed in the national economy. In most instances, this step four inquiry can be answered adequately by reference to the Dictionary of Occupational Titles and the Selected Characteristics. When those vocational materials are inadequate, however, the Secretary's Rulings contemplate that additional information will be sought from a vocational expert