Helen GATSON, Plaintiff–Appellant,

v.

Otis R. BOWEN, M.D., Secretary of the
Department of Health and Human
Services, Defendant–Appellee.

No. 86–1078.

United States Court of Appeals,
Tenth Circuit.

Feb. 2, 1988.

Martha Ridgway Schmid (Luis Mata with her on the brief), Wyandotte–Leavenworth Legal Services, Kansas City, Kan., for plaintiff-appellant.

Robert A. Olsen, Asst. U.S. Atty. (Benjamin L. Burgess, Jr., U.S. Atty., with him on the brief), Kansas City, Kan., for defendant-appellee.

Before McKAY, ANDERSON and BALDOCK, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Helen Gatson applied for social security disability insurance benefits in June 1983, having met the earnings requirements through December 31, 1982. Her application was denied at all stages of the Social Security Administration's review process. The denial was upheld by the district court. We reverse for failure to apply the correct standards to the evaluation of subjective pain.

## BACKGROUND

The claimant alleges that she became disabled perhaps as early as September 1978 but in no event later than December 31, 1982 due to a heart condition, arthritis, right-hand impairment, hiatal hernia, and kidney problems, all accompanied by severe pain in her left leg and hip, right hand, chest, shoulders, and neck. During the five years prior to September 1978 she performed medium-heavy work in a chair factory, preceded by ten years as a sewing machine operator in a garment factory. In 1978, because of an injury to the nerves in her right hand, she left her job in the chair factory. She received worker's compensation benefits for a brief period and has not worked for pay since the injury.

In July 1982, the claimant was hospitalized for severe bronchitis and hemoptysis (expectoration of blood from the respiratory tract). At the time of her hospitalization, x-rays were taken, indicating marked cardiomegaly (enlarged heart). Other diagnostic findings indicated some congestive heart failure, atherosclerotic heart disease, and angina pectoris (chest pain). R. Vol. I at 128. At the time of her hospital admission, her treating physician, Dr. Reginald W. Hall, noted the claimant's previous medical history of both "carpal tunnel release" (referring to the prior surgery on the nerves of her right hand) and "some rheumatoid arthritis." *Id.* at 129. There are medical findings in the record supporting the claimant's right hand impairment but no such evidence as to the rheumatoid arthritis. In the same hospital report, Dr. Hall stated that the claimant "complains of chronic arthralgias and weakness of the arms and legs and [has been] unable to work as a result...." *Id.* at 129. She was released early from the hospital "because of some financial matters" after marked improvement in her bronchitis. *Id.* at 128.

On June 30, 1983, Dr. Hall, who had treated the claimant since 1980, wrote a letter to the Social Security Administration describing the claimant's medical condition over the past several years. He noted 1980 objective test results substantiating the claimant's right hand impairment, and reported stiffness, weakness, inflammation, and muscular atrophy in the hand subse-

quent to her carpal release surgeries. *Id.* at 150. Dr. Hall observed that financial constraints prevented "definitive therapy" on her wrist. The letter also reported the claimant's recurring angina and the results of a treadmill electrocardiogram (ECG). Dr. Hall stated that the treadmill results were

"somewhat compromised by the fact that [the claimant] has been taking lanoxin for the control of congestive heart failure which she has developed in the past two years. Her official report therefore only reveals a boarderline [sic] abnormal tracing with S–T segment changes which possibly where [sic] releated [sic] to the digoxin but which in fact are true abnormal findings. Mrs. Gatson, dispite [sic] her determination has very little exercise tolerance and has had marked orthopnea which is now improving somewhat although her angina is still very active. This lady also needs further care toward her cardiovascular system in terms of evaluation but is also unable to afford this because of the situation which has resulted from the disability of her hand."

The treadmill results are in the record and were available for review by the Social Security Administration's consulting physicians.

According to the record, the claimant began taking Nitrostat for her enlarged heart in 1980, Bufferin #3 in 1982 for arthritis and body pain, potassium in 1982 for energy, and LaSix in 1982 to drain fluid from her heart. In 1983 she began using nitroglycerin ointment and Lanoxin for her heart, and Motrin for her arthritis. In 1984 valium was prescribed. R. Vol. I at 170.

The claimant testified that the pain in her side and right hand became bad in 1977, shortness of breath developed in 1980, pain in her left leg and hip became pronounced in 1981 and in her shoulders and neck in 1982. *Id.* at 40–41. The testimony of the claimant and two other witnesses then focused on the nature of her pain and her limited daily activity. Neither the claimant's attorney nor the ALJ made an effort to clarify the extent of the claimant's pain and limitations prior to December 31, 1982, the date by which her disability had to be established in order to receive disability benefits. The claimant indicated that, in general, the pain had intensified since 1977 and that her chest pain had been getting worse since 1980. Although this would suggest that her overall pain in 1982 was greater than in 1977, it is not clear whether the pain levels in late 1982 and at the time of the 1984 hearing were different in any significant degree. Certainly, the basic complaints had not changed from the initial claim for disability in June 1983, and except for a few statements referring to a current time frame, the testimony seemed to refer to the claimant's condition both before and after December 31, 1982. Furthermore, there is no indication that the testimony was not accepted by the ALJ as referring to the pre–1983 period.

The claimant and her friends described her continuing inability to reach, lift, bend, carry groceries, hold her coffee cup, garden, reel in her fish when she went fishing with her husband, curl her hair, sing, or even sit through church because of the pain and discomfort. The testimony also revealed the adaptations made by the claimant in order to dress, wash dishes, cook, and do the laundry. The claimant testified that she could not sit or stand for any length of time, nor walk around the block, without exhaustion and pain. She described severe pain even upon resting and sleeping. She also testified that currently she could not lift a ten pound bag of potatoes but could lift five pounds of sugar if she used both hands, although not without chest pain. The claimant also described kidney problems and a hiatal hernia that accentuated her distress, neither of which is addressed by the medical evidence, although the claimant referred to interaction with physicians with respect to those conditions. In the case of the hernia, it appears that the pain testimony described current pain and did not address the level of pre–1983 pain. According to her, "[e]verything that I lift, sometime I bend over, it just seem like everything in my chest is going to come out through my mouth. And everything I pick up *now*, it just seem like it go right straight to my

chest. It just hurt and make a pain in my chest." *Id.* at 47 (emphasis added).

The ALJ also considered medical evidence from a consulting physician and an occupational therapist, both of whom examined the claimant for the Social Security Administration in August 1983. The consulting physician, Dr. George Varghese, reported the claimant's multiple pain symptoms, found them "rather vague," and noted that the claimant appeared "emotionally very upset." *Id.* at 153. He noted some limitation in the joints of the claimant's right hand, along with decreased grip strength, although he did not detect continuing inflammation and muscle atrophy. He also acknowledged a pre-existing report of "ischemic heart disease" and opined that "her major disability should be on the basis of cardiovascular system than [sic] musculoskeletal involvement." *Id.* at 153. The occupational therapist, Janice Vollmer, evaluated the strength, range of motion, coordination, and sensation in the claimant's two upper extremities. She found restricted range of motion and strength in the right upper extremity, along with minor sensory loss and impaired coordination in the right hand. She reported that the left upper extremity was within grossly normal limits on the four measures. *Id.* at 153–54.

In addition to these examinations, the ALJ considered the residual functional capacity (RFC) assessments of two consulting physicians who filled out RFC forms based on their evaluation of the records but without examination of the claimant. Without explanation, they both opined that the claimant had the RFC for light work, with limitations as to fine work with the right hand.

Based on the medical evidence of record the ALJ found that the claimant had an impairment that precluded her return to past relevant work. He nonetheless found that she retained the RFC to engage in light work that did not require fine motor skills with the right hand. He determined that her capacity for light work "was not significantly compromised by her exertional limitations," which he equated with her

allegations of pain, shortness of breath, and right hand limitations. *Id.* at 12. Elaborating, he stated that "[t]he claimant's subjective complaints of pain in her left leg and hip, right hand pain, chronic shortness of breath, hiatal hernia, coughing, and pain in her neck and shoulders are not as credible or limiting as alleged prior to December 31, 1982, *based on the medical evidence of record.*" *Id.* at 12 (emphasis added). He also stated that "While the claimant doubtless experienced some discomfort, there is *no evidence* that her pain was of such character or dimension as to interfere significantly with all work-related activities prior to December 31, 1982." *Id.* at 11 (emphasis added). Finally, he found that "[t]here were no nonexertional limitations." *Id.* The ALJ therefore applied the Secretary's medical-vocational guidelines, which dictated a determination that the claimant was not disabled.

## LEGAL ANALYSIS

 When a claimant establishes a severe impairment precluding the ability to return to past relevant work, the burden shifts to the Secretary to establish that there is work in the national economy that the claimant can perform. *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984). *See* 42 U.S.C.A. § 423 (d)(2)(A) (1987). If the claimant's RFC and other relevant characteristics (age, education, work experience) exactly fit one of the "grids" in the Secretary's medical-vocational guidelines then the guidelines may be used to meet that burden of proof. *Channel,* 747 F.2d at 579. 20 C.F.R. part 404, subpt. P. App. 2, § 200.00 (1987). *See Heckler v. Campbell,* 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). Where, however, exertional limitations do not match any of the RFC levels of work activity (sedentary, light, medium, heavy, or very heavy), or where significant nonexertional limitations exist, the ALJ may not automatically apply the closest "grid-fit." Instead, the grids may be used only as a framework for assessing whether the claimant is disabled. 20 C.F.R. part 404, subpt. P, App. 2, § 200.00(e)(2).

■ Here, the ALJ found that the claimant's allegations of pain and weakness did not significantly compromise her ability to perform light work and that she had no nonexertional limitations and thus determined that the grids could dictate the outcome. Both these assertions fly in the face of the pain testimony and the evidence submitted by the treating physician. They were not questioned by the Secretary's Appeals Council when, on February 1, 1985, it declined to review the ALJ's decision. By this date, the new (1984) Congressional pain statute was in effect, codifying how the Social Security Administration was to evaluate subjective complaints of disabling pain. Also by this date this court had declared that pain can be a nonexertional limitation. *Channel*, 747 F.2d at 580. Later cases have continued to adopt this position. *See Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir.1988); *Teter v. Heckler*, 775 F.2d 1104, 1105 (10th Cir.1985); *Turner v. Heckler*, 754 F.2d 326, 331 (10th Cir.1985). Because the record on appeal provides no statement of the reasons for the Appeals' Council's denial of the claimant's request for review of the ALJ decision, we accept that decision as the Social Security Administration's interpretation of the pain standards in effect in February 1985.

■ The ALJ stated that "based on the medical evidence of record" the claimant's subjective complaints of pain prior to December 31, 1982 were not as credible or limiting as alleged. No additional explanation for this conclusion is offered, suggesting that the ALJ believed the medical evidence did not confirm, was inconsistent with, or in some way overcame the claimant's testimony. Although it is true that

subjective pain testimony alone is not sufficient to produce a determination of disability, a careful reading of the 1984 Congressional pain provision makes clear that medical evidence need not confirm or prove the degree of pain alleged.[1] *See Luna v. Bowen*, 834 F.2d 161, 162–65 (10th Cir.1987). Under the statute, the medical evidence must establish an impairment that could reasonably be expected to produce the alleged pain, and statements regarding the intensity and persistence of the pain must be reasonably consistent with the medical findings and signs. *Id.; see Huston*, at 1129.

■ The ALJ's conclusion "based on the medical evidence" is unsupportable because the medical signs and findings, in fact, do establish serious heart and hand impairments and active angina. Moreover, the medical test results submitted by the treating physician *are* consistent with the claimant's subjective allegations. Dr. Hall reported the claimant's congestive heart failure, atheroschlerosis, and active chest pain extending back to the time period in question. He explained the seriousness of the borderline abnormal findings on her treadmill ECG, which although taken four months after December 31, 1982 and not alone sufficient to establish a disabling medical impairment before then, certainly does nothing to contradict the conclusion that the patient had a heart condition, accompanied by pain, prior to that date.

■ Furthermore, objective medical evidence of disabling pain need not consist of concrete physiological data alone but can consist of a medical doctor's clinical assessment as well, where based on "any evi-

1. In pertinent part, the provision reads: "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques ... must be *considered* in reaching a conclusion as to whether the individual is under a disability." 42 U.S. C.A. § 423(d)(5)(A) (1987) (emphasis added).

dence that an examining doctor can discover and substantiate." *Luna,* 834 F.2d at 162. As we stated in *Nieto v. Heckler,* 750 F.2d 59, 61–62 (10th Cir.1984),

"[A] medical finding of disability is not based solely on objective test results. It includes an evaluation of the patient's medical history and the physician's observations of the patient, and necessarily involves an evaluation of the credibility of the patient's subjective complaints of pain. A medical opinion based on all of these factors is medical evidence supporting a claim of disabling pain, even if the objective test results, taken alone, do not fully substantiate the claim."

Dr. Hall's opinion from having treated and observed the claimant since 1980 was that she had "continued to suffer .... and has attempted, dispite [sic] all odds, to try to do things physically, but has been totally unable to do them because of her hands and the pain and disability that has resulted from this." R. Vol. I at 150. He then noted that the "true abnormal findings" of her treadmill ECG, and additional limitations from her active angina, minimal exercise tolerance, and marked shortness of breath. He concluded:

"this lady is a quite proud individual and has taken and still takes, pride in the fact that she has been quite independent and a provider and contributor to her family's financial and emotional well being. Since the problem with her hands and heart she has become increasingly depressed and frustrated because she is disabled and has been unable to get any help regarding this. I think this is one individual who is sincerely deserving of serious consideration for disability."

*Id.* at 151. A follow-up letter in 1984 indicated that he had seen the claimant again and that she had "not improved one bit" and continued to have arthralgias, weakness, hand pain, indigestion, heart burn, "esophageal reflex", and "both extertional [sic] chest pain and chest pain with stress consistent with angina pectoris." *Id.* at 164.

■ Dr. Hall's clinical impressions of the claimant's credibility, and the diagnostic and laboratory findings of serious heart disease and right hand impairment are all compatible with the existence of severe pain and consistent with the claimant's subjective testimony. While Dr. Hall's testimony alone might not establish that the claimant could not perform *any* work, such is not its burden. It does not erode or contradict the pain testimony. Moreover, the claimant does not bear the burden to prove that her pain and right hand weakness substantially diminish her capacity for a full range of light work on a sustained basis; instead the Secretary shoulders the burden of showing that the pain and weakness do *not* substantially diminish it. *See Channel,* 747 F.2d at 579; *Talbot v. Heckler,* 814 F.2d 1456, 1460 (10th Cir.1987).

■ The medical evidence is not sufficient to meet the Secretary's burden. Neither the findings of the treating physician nor the reports of the Social Security Administration's consulting physicians and occupational therapist establish the claimant's full capacity for light work. The comments of Dr. Varghese regarding the claimant's vagueness do not substitute for Dr. Hall's personal knowledge of the claimant over time. *See Talbot,* 814 F.2d at 1463. Nor do his speculations regarding the emotional component of her pain. Moreover, Dr. Varghese did not discount or discredit the patient's heart disease but merely opined that her musculoskeletal involvement was less of a basis for finding a disability than was her heart disease. As for the views of the consulting physicians who filled out the RFC forms, we have previously noted the "suspect reliability" of such forms when filled out, as here, without explanation of the basis for the conclusions and without evidence of any examination of the claimant. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir.1987). The report of the occupational therapist also does nothing to prove the claimant's ability to perform a full range of light work. It speaks only to the question of impairment of the claimant's arms and hands and not to her heart disease. Therefore, it in no way negates the testimony of other impairments that combine with her hand impairment. In short, none of the evidence by

the Social Security Administration's consultants outweighs the medical signs and findings provided by the treating physician that the claimant is experiencing significant pain and weakness; none of it constitutes substantial evidence that the claimant has the RFC to engage in a full range of light work on a sustained basis.

 Even assuming the medical evidence, taken by itself, suggests that the claimant had the RFC for light work, the claimant's subjective pain testimony must be evaluated in determining her RFC. In this case, there is evidence from the claimant herself that her pain is continual, severe, and both exertional and nonexertional in nature. Much of the pain is experienced upon lifting, bending, reaching, walking, and otherwise exerting herself in the kind of activities that could be directly related to jobs in the light work category.[2] On the other hand, much of the pain appears primarily nonexertional in character and is experienced while resting, sitting or standing for short periods, or merely performing such minimal activity as attempting to lift a coffee cup. *See Huston v. Bowen*, 838 F.2d at 1131. Without explanation the ALJ stated that there was "no evidence" that claimant's pain interfered significantly with all work-related activities prior to December 31, 1982. R. Vol. I at 11. He also found "no nonexertional limitations." *Id.* In both these respects the ALJ erred. The testimony at the hearing certainly provided evidence that the claimant's pain would interfere significantly with her RFC for light work. And unless the testimony was properly found not to be credible, it precluded application of the grids without an individualized determination that despite the claimant's credible exertional and nonexertional pain she retained the RFC for a full range of light work on a sustained basis. Here, invoking the medical evidence was not a proper basis for a determination of non-

credibility because it did not constitute substantial evidence refuting or otherwise undermining the claimant's allegations of disabling pain.

## SUMMARY

 Where medical signs and findings establish the existence of a medical impairment that reasonably could be expected to produce disabling pain in some individuals, and where statements of the claimant *or* treating physician regarding the intensity and persistence of pain are reasonably consistent with the medical signs and findings, a conclusion that pain is disabling can be justifiable. *See Huston*, at 1129; *Luna*, 834 F.2d at 164; 42 U.S.C.A. § 423(d)(5)(A). Here, such an impairment has been established, and the statements of both the claimant *and* the treating physician are reasonably consistent with the medical evidence. The Social Security Administration did not apply the correct standard for evaluation of subjective pain. Instead, it seemed to assume that the medical signs and findings must establish the disabling pain rather than merely establish an impairment that could be reasonably capable of producing the alleged pain. The ALJ's conclusion that there was no evidence that the claimant's pain significantly interfered with all work-related activities prior to December 31, 1982 can only be arrived at by misreading the medical evidence and then disregarding the testimony at the hearing. Discounting relevant testimony and reducing its credibility cannot be based on a belief that medical evidence which does not *establish* disabling pain thereby overrides all nonmedical evidence. *See Huston*, 838 F.2d at 1131 (claimant entitled to have nonmedical testimony of pain evaluated and weighed by ALJ alongside medical evidence). We can only conclude that in this case the Social Security Administration misapplied the law.

---

**2.** Light work is defined in the Social Security regulations as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b) (1987).

"Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir.1984) (quoting *Smith v. Heckler,* 707 F.2d 1284, 1285 (11th Cir.1983)). Because the ALJ did not apply the correct standards for evaluating subjective pain and was not justified in applying the grids to demonstrate that the claimant could perform a full range of light work, given her pain and weakness, we reverse. No purpose would be served by a remand for further findings because we note that if the ALJ had determined that the claimant retained the functional capacity for sedentary work, the grids would dictate a finding of disability.

The district court is instructed to remand the case to the Social Security Administration for the award of benefits from July 26, 1982, by which time the medical records are sufficiently compatible with claimant's allegations of pain to determine that the pain was disabling.

While there is no motion before us, the claimant is entitled to an award of attorney's fees under 42 U.S.C. § 406(b)(1). Determination of the amount, including resolution of any factual dispute as to a reasonable amount, for representation before the federal courts is to be determined by the district court after proper petition thereto. *See Harris v. Secretary of Health & Human Servs.,* 836 F.2d 496 (10th Cir.1987).

REVERSED.