**B. Jane MOSTELLER, Plaintiff,**

v.

**Otis BOWEN, Secretary of Health and Human Services, Defendant.**

No. 87–1307–C.

United States District Court,
D. Kansas.

Dec. 19, 1988.

David H.M. Gray, Gragert, Hiebert & Gray, Wichita, Kan., for plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant.

MEMORANDUM AND ORDER

CROW, District Judge.

This is an action to review the final decision of the Secretary of Health and Human Services [42 U.S.C. § 405(g)] denying disability benefits to plaintiff B. Jane Mostel-

ler. The case comes before the court on plaintiff's motion for summary judgment and defendant's motion to affirm.

In January of 1986, plaintiff filed an application for disability benefits, alleging she became disabled on July 25, 1985, at the age of 35, because of multiple sclerosis in remission and a "candida yeast infection (systematic)." Plaintiff's application was denied initially and on reconsideration. On January 14, 1987, the administrative law judge (ALJ) found that plaintiff was not disabled as defined in the Social Security Act. The Appeals Council denied plaintiff's request for review on April 9, 1987.

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the finding of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971); *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir.1985). "Evidence is not substantial 'if it is overwhelmed by other evidence ... or if it really constitutes not evidence but mere conclusion.' " *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir.1985) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Although the court is not to reweigh the evidence, the findings of the Secretary will not be mechanically accepted. *Claasen v. Heckler*, 600 F.Supp. 1507, 1509 (D.Kan.1985). Nor will the findings be affirmed by isolating facts and labelling them "substantial evidence," as the court must scrutinize the entire record in determining whether the Secretary's conclusions are rational. *Holloway v. Heckler*, 607 F.Supp. 71, 72 (D.Kan.1985).

The Social Security Act provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national econo-my...." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Claimant has the burden to prove a disability. After the claimant has made a prima facie showing that his disability prevents him from returning to his previous work, the Secretary has the burden of going forward and showing that claimant has the capacity to perform alternative work and that this type of job exists in the national economy. *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir.1984). Consequently, if claimant proves a disability, then the Secretary's denial of benefits for the reason of claimant's ability to do other work for which jobs exist in the national economy must be supported by substantial evidence. *Gossett v. Bowen*, 862 F.2d 802, 804–05 (10th Cir.1988).

For determining whether a claimant is disabled, a five-step sequential evaluation has been developed by the Secretary. 20 C.F.R. §§ 404.1520, 416.920 (1986); *see Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988). If claimant's proof fails at any of the steps, consideration of any subsequent step is unnecessary.

The relevant inquiry of step one is whether the claimant is currently engaged in substantial gainful activity. If not, the factfinder next considers "whether the claimant has a medically severe impairment or a combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987). Step three entails determining "whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," and which are found at 20 C.F.R. §§ 404.1520(d), 416.-920(d) (1986). If no equivalency, then the claimant must show that the "impairment prevents [him] from performing work he has performed in the past." *Bowen v. Yuckert*, 107 S.Ct. at 2291. The final step is to determine whether the claimant has the residual functional capacity (RFC) "to perform an alternative work activity and that this specific type of job exists in the national economy." *Channel v. Heckler*, 747 F.2d at 579; 20 C.F.R. §§ 404.1520(f) (1986).

To meet the burden of step five, the Secretary in appropriate circumstances may rely on the Medical–Vocational Guidelines (grids), 20 C.F.R., Pt. 404, Subpt. P, App. 2 (1986). *Heckler v. Campbell,* 461 U.S. 458, 467–69, 103 S.Ct. 1952, 1957–59, 76 L.Ed.2d 66 (1983). When the claimant's RFC and other relevant characteristics (age, education, work experience) "exactly fit one of the 'grids' in the Secretary's medical-vocational guidelines then the guidelines may be used to meet that burden of proof." *Gatson v. Bowen,* 838 F.2d 442, 446 (10th Cir.1988) (citations omitted). A claimant is placed in one of five RFC categories depending on his "capacity for work activity on a regular and continuing basis." *Channel,* 747 F.2d at 579, [quoting App. 2, § 404.1545(b); App. 2, § 200.00(c) ]. Most importantly, "a claimant must be able to perform the *full range* of such work on a daily basis in order to be placed in a particular RFC category." *Turner v. Heckler,* 754 F.2d at 328, (quoting *Channel,* 747 F.2d at 579–80; emphasis in original).

In his order of January 14, 1987, the ALJ found:

1. The claimant meets the Title II disability earnings requirements of the Act for purposes of entitlement.

2. The claimant has not engaged in substantial gainful activity at any time pertinent herein.

3. The claimant is now 37 years of age, has a high school education and one year of college training, and has worked primarily as a telephone operator.

4. The impairments considered for potential disability include a possible low back disorder, musculoskeletal pain and restriction, a history of hypoglycemia and hypothgroidism, a condition diagnosed as chronic candidiasis and Epstein Barr virus syndrome, emotional difficulties, and somatization disorder with hysterical functional overlay.

5. The claimant's statements of severe pain, physical restriction and limitation are not found credible in the sense of precluding all substantial gainful activity.

6. The claimant does not experience pain, fatigue and weakness of sufficient severity and duration to preclude all substantial gainful activity on a sustained basis.

7. The claimant's psychological difficulties are shown in the record not to be sufficient to preclude her from performing sustained vocational activity.

8. The claimant's conditions, considered singly or in combination, have not prevented her from working within the scope of her previous training and experience for any continuous period of twelve months or longer.

9. The claimant has maintained the residual functional capacity to do her primary work as a telephone operator.

10. The claimant was not prevented from engaging in any substantial gainful activity for any continuous period beginning on or before the date of this decision, which lasts or could be expected to last at least twelve months.

11. The claimant was not under a disability as that term is defined in the Social Security Act, as amended, at any time on or before the date of this decision.

(Rec. 20–21). Plaintiff challenges these findings arguing the ALJ ignored the evidence as a whole; the ALJ ignored subjective evidence of disability; the ALJ failed to consider the combined effect of plaintiff's impairments; the ALJ improperly evaluated plaintiff's credibility; and the ALJ improperly applied the twelve-month durational requirement. While addressing these challenges, the court will also determine whether the Secretary's negative findings at steps two, four and five are supported by substantial evidence.

The record is replete with opinions and diagnoses from numerous physicians on plaintiff's condition. Besides her primary treating physicians, plaintiff saw others on referral, but many of the physicians were visited on plaintiff's decision alone. The sheer number of diagnoses is complicating alone, but the inconclusive and inconsistent diagnoses aggravate the difficulty in deciding the case.

The ALJ's decision must be based on the records as a whole. *Cole v. Heckler*, 616 F.Supp. 871, 874 (D.Kan.1984); *Claasen v. Heckler*, 600 F.Supp. at 1509. Plaintiff primarily contends that the ALJ ignored the evidence as a whole as the order did not mention the medical impairment evaluation of Dr. Steven Acker, who diagnosed the cause of plaintiff's symptoms as Epstein Barr Virus Syndrome. The ALJ, however, did discuss Dr. Acker noting, in part:

> He associated her complaints of pain and chronic fatigue with Epstein Barr virus syndrome and candidiasis. He prescribed a treatment which included medication, diet and supplementation. Finally, the physician considered her prognosis fair to good but noted that a functional basis, she would be considered unable to sustain physical activity.

(Rec. at 16). Of the numerous physicians, Dr. Acker is the only one to diagnose Epstein Barr virus syndrome. In the medical report prepared on February 27, 1986, Dr. Acker does not mention Epstein Barr virus and states that plaintiff's prognosis was good. Dr. Acker apparently referred plaintiff to Dr. Hinshaw who reported on February 25, 1986, that plaintiff was undergoing treatment for intestinal candidiasis and that she has shown a "slight to moderate gain in muscle strength." Dr. Hinshaw concluded that the date of plaintiff's optimum improvement was difficult to state but that these patients generally require from three months to three years. He expected complete recovery by plaintiff and made no reference to the Epstein Barr virus syndrome. On the other hand, Dr. Acker first mentioned the Epstein Barr virus syndrome in the medical impairment evaluation prepared on September 24, 1986. Dr. Acker listed muscle fatigue as plaintiff's only impairment, but he considered it disabling as plaintiff could not perform sustained physical activity.

The ALJ properly considered the entire record as shown in the recitation of plaintiff's visits to various doctors during the years of 1985 and 1986. The fact that the ALJ chose to believe certain physicians and discounted the opinions of others is entirely appropriate when supported by rational and reasonable grounds. This court agrees that the clinical findings of plaintiff's condition do not support the conclusion of disability. This case particularly requires the factfinder to look behind the conclusions of the physicians and determine whether the clinical findings and treatment are consistent. In addition, the factfinder must also weigh the credibility and bias of the respective physicians.

As to Dr. Manning, it appears that while having the opinion that plaintiff was disabled, he also released her to work and apparently encouraged her to return to work as therapy. (Rec. 161, 248–250). Nevertheless, in his letter to the benefits analyst for the employer's insurance company, Dr. Manning concluded that plaintiff "is totally disabled for gainful employment."

The ALJ noted that plaintiff saw Dr. Sweet for a second opinion. Dr. Sweet, a specialist in internal medicine, remarked in a letter dated June 9, 1986 that plaintiff's "exam was completely normal except for mental status." (Rec. at 246). Dr. Sweet saw no evidence of a physical illness and believed plaintiff's problems were primarily "psycho-physiologic in origin." Dr. Sweet diagnosed a panic disorder with an associated degree of conversion reaction. Dr. Sweet concluded:

> I find it very difficult to recommend for her to go to work now, since she was having so many problems the day I saw her. Even though she had been well the week before, she was having marked symptoms and inability to "even move very well" when I saw her. I feel that she would not be able to tolerate the work place at this time based on my history and physical findings today.

(Rec. at 246). The ALJ properly weighed Dr. Sweet's opinion and diagnosis to the extent of her speciality but appropriately looked to other specialists regarding plaintiff's mental status.

In January 1986, plaintiff saw Dr. Little, a psychiatrist, who diagnosed multiple sclerosis generalized and yeast allergy. Dr.

Little gave no basis for his diagnosis of multiple sclerosis and reported no psychiatric diagnosis.

In a letter dated February 17, 1986, Drs. Pankow and LeVine, psychiatrists, stated their diagnosis, as follows:

> The patient meets the criteria for somatization disorder. She does not have a psychiatric illness that prevents her from working. There is some question about a possible underlying depression. The depression symptoms however may be independent or secondary to the somatization order.

(Rec. at 245). These psychiatrists with the Kansas University School of Medicine did the evaluation of plaintiff at the request of her employer.

At the request of the Secretary, Dr. Brian Romalis, a psychiatrist, examined plaintiff on March 17, 1986, and concluded that psychiatrically she could meet simple production requirements, comprehend simple instructions, and get along with others on the job. (Rec. at 200).

Another psychiatrist, Dr. F.C. Newsom, examined plaintiff at the request of her employer on June 23, 1986. He considered plaintiff a difficult case to diagnose but settled on the opinion of "hyprochrondriacal neurosis." Other than her fixed belief that all of her symptoms were due to yeast infection, plaintiff's judgment was unimpaired and her intellectual functioning was in the bright normal range. (Rec. at 289–291). In a letter dated October 15, 1986, to plaintiff's attorney, Dr. Newsom stated that he considered plaintiff to be "totally disabled as a result of impairments described" in his report to the plaintiff's employer. (Rec. at 288).

The record also includes a letter from Ron Bolton, a clinical psychologist, who had seen plaintiff for three therapy sessions. He concurred with Dr. Manning's opinion that plaintiff was "currently totally disabled by a 'complex interaction between her physical and psychological problems.'" He suggested that plaintiff be placed on one year disability and then reevaluated for employment thereafter. (Rec. at 292–93).

The ALJ properly considered the medical evidence as a whole and the combined effect of plaintiff's impairments. This is a peculiar case in that medical opinions differed not only to the extent of claimant's impairment but as to the nature of the impairment itself. The ALJ did not recklessly discount the opinions of treating physicians and simply adopt the conclusions of those physicians hired by the Secretary for consultative examinations. The ALJ found that many of the treating physician's own clinical findings and recommendations did not sustain their conclusion of total disability. The combined effect of plaintiff's impairments did not escape the ALJ's attention, as many of the physician's opinions were based on the interaction of plaintiff's physical and psychological impairments. The ALJ simply decided from the entire record that plaintiff's psychological impairment with associated physical symptoms did not constitute a disability.

■ Plaintiff also contends that the ALJ improperly evaluated plaintiff's subjective complaints of pain. Subjective pain testimony does not alone prove a disability, as "medical evidence must establish an impairment that could reasonably be expected to produce the alleged pain, and statements regarding the intensity and persistence of the pain must be reasonably consistent with the medical findings and signs." *Gaston v. Bowen*, 838 F.2d at 447 (citations omitted). Medical evidence need not confirm the alleged degree of pain. *Id.* When the plaintiff's subjective testimony is not fully accepted as true, the ALJ must give specific reasons for disbelieving the plaintiff. *Claasen*, 600 F.Supp. at 1507.

The ALJ properly concluded plaintiff's complaints of pain were not reasonably consistent with the medical findings and signs. He also questioned her credibility on the intensity of the pain in light of the vague terms used by her to describe the pain to physicians. Finally, the ALJ believed plaintiff's physical activity did not show her pain to be seriously compromising. None of these findings are improper and are supported by sufficient evidence.

Finally, plaintiff contends the ALJ improperly applied the twelve-month durational requirement. The court has reviewed the ALJ's finding and perceives nothing inconsistent with the holding in *Neal v. Bowen,* 829 F.2d 528, 530–31 (5th Cir.1987); and *Singletary v. Bowen,* 798 F.2d 818, 821–22 (5th Cir.1986). Plaintiff's contention is without merit.

IT IS THEREFORE ORDERED that defendant's motion to affirm is granted, and plaintiff's motion for summary judgment is denied.