Edward A. FRANCIS, Plaintiff,

v.

Shirley S. CHATER, Commissioner,
Social Security Administration,
Defendant.

Civil Action No. 96–1290–WEB.

United States District Court,
D. Kansas.

June 11, 1997.

Dennis L. Phelps, Wichita, KS, for Plaintiff.

Stephen K. Lester, Office of U.S. Atty., Wichita, KS, for Defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, Senior District Judge.

Plaintiff Edward A. Francis filed an application for disability insurance benefits May 18, 1994, alleging a disability onset date of May 31, 1993, due to asthma, dyslexia, depression and pain following a back injury. After initial denials of his claims, he pursued the matter to a hearing before an Administrative Law Judge on October 4, 1995. At that time, Mr. Francis, who was represented by counsel, and James Molski, a qualified vocational expert, appeared and testified.

In an decision dated December 6, 1995, the ALJ found that plaintiff was not disabled at step five of the controlling analytical sequence. *See Williams v. Bowen,* 844 F.2d 748, 750–752 (10th Cir.1988). The Appeals Council concluded that there was no basis under the provisions of 20 C.F.R. 404.970 for review, and accordingly the ALJ's decision stands as the final decision of the Commissioner. Plaintiff has appealed the adverse decision to this court, pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. 405(g).

In this appeal, plaintiff contends that the decision of the ALJ and Secretary that plaintiff was capable of performing light and sedentary work is contrary to the evidence and based upon an incomplete hypothetical pre-

sented to the vocational expert witness which did not include the element of disabling pain. In this respect, it is alleged that the ALJ "totally ignored" plaintiff's testimony regarding pain and failed to consider plaintiff's inability to concentrate for a sufficient time to engage in work activity. In addition, error is claimed because the ALJ failed to give great weight to the opinion of plaintiff's treating physician and failed to consider plaintiff's impairments in combination.

The Commissioner's decision is to be reviewed "to determine whether the factual findings are supported by substantial evidence in the record, viewed as a whole and whether the correct legal standards were applied." *Saleem v. Chater,* 86 F.3d 176–178 (10th Cir.1996); and see *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir.1993). Substantial evidence is of course "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen,* 876 F.2d 1451, 1453 (10th Cir.1989). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994).

With these standards in mind, the court has reviewed the record and finds that the evidence supports the finding that plaintiff is not disabled under the law.

At the time of hearing, plaintiff was 34 years old, 5'8" tall, weighing between 200 to 220 pounds, with a high school education. Plaintiff's only work history has been with a family business, the Wichita Vacuum Cleaner Company, where he learned to repair vacuum cleaners. He was engaged in that work when he was injured in a fall from a roof on May 30, 1993, while helping an older brother with repairs. The fall resulted in a "burst fracture" and fractured right transverse process and left lamina of the L–1 vertebra.

On May 31, 1993, Dr. Charles Pence performed a posterior spinal fusion with the insertion of two metal rods from the T–12 vertebra to the L–2 vertebra, and plaintiff remained hospitalized until June 4, 1993. By July 8, 1993, Dr. Pence reported that the back injury was healing well, and that plaintiff was able to return to work with his brace. (Tr. 164) Final X-rays in September, 1993

indicated a solid healing of the fracture and no loss of fixation. (Tr. 163) The only restriction noted by Dr. Pence was a ban on heavy lifting. Dr. Pence examined plaintiff for the last time on April 8, 1994, and noted that plaintiff was not experiencing any pain from the surgically implanted rods, since he complained only of minor back discomfort. (Tr. 159) In a report dated May 19, 1994, Dr. Pence, noting that Mr. Francis still experienced back pain, recommended only that plaintiff avoid heavy lifting and repeated bending or stooping. (Tr. 170)

A report from Dr. Lawrence R. Blaty, dated January 26, 1995, noted that plaintiff had made progress with a physical therapist and suggested permanent work restrictions on lifting over 20 pounds frequently or 50 pounds occasionally, with only occasional bending or twisting, no more than 4 times per hour, squatting of no more than 10 times per hour, and no standing or sitting for more than 60 minutes at a time. (Tr. 150–153)

On October 26, 1995, Dr. Stan Mosier prepared a report requested by plaintiff's counsel (Ex. A, Stipulation to Supplement Transcript). Dr. Mosier, who had been plaintiff's family physician since 1988, noted that he had not treated plaintiff for almost two years. (Tr. 157). Based on earlier medical records and "on plaintiff's verbalization of work restrictions" (Ex. A, *supra* ), it was Dr. Mosier's opinion that plaintiff could not return to his past work, that he would be unable to do desk type jobs involving reading, because of his "known" dyslexia, and that he would have difficulty obtaining full-time employment in a normal job setting. Dr. Mosier's records reflected that when he last examined plaintiff in September, 1993, plaintiff had good muscle strength, and he believed that the stiffness and numbness plaintiff complained of was the temporary result of recent surgery and use of a back brace (Tr. 156).

With reference to plaintiff's alleged mental impairments, the records show Dr. Larry Boll, a licensed psychologist retained by the agency, conducted a psychological examination on June 28, 1994. He found that plaintiff, who had never married, had few relationships outside his family, and had verbal, performance and full scale IQ levels in the

"low eighties." (Tr. 173–174). Dr. Boll further found that plaintiff had average "social intelligence" and "common sense" and was only mildly deficient in perceptual-motor abilities and psychomotor speed. Dr. Boll diagnosed a mixed personality disorder, borderline mentality, and classified plaintiff as immature, dependent, and likely to express avoidant tendencies. He further stated that in many respects, plaintiff would function more like an individual of dull normal or low average intelligence, and that he did not regard plaintiff as being totally disabled or unemployable from a psychological standpoint because he was able to comprehend and follow simple instruction and do simple, routine tasks, without decompensation in work settings. (Tr. 175)

Upon referral by plaintiff's counsel, plaintiff was examined by Dr. Howard Brodsky, a licensed psychologist, on January 3, 1995. (Tr. 197–201). Dr. Brodsky found that overall, plaintiff was "in the low average of intelligence," with personality problems involving ambivalence and depression, with chronic dependent personality attributes. Dr. Brodsky believed that plaintiff lacked "stamina or psychological adequacy to perform production level work." He recommended psychotherapy treatment "to discuss plans to increase self worth and increase independent functioning," and also a medical consultation to consider pharmaceuticals appropriate for treatment of depressive symptoms. (Tr. 201)

Rex Lee, M.D., saw plaintiff on May 31, 1995 and his report, dated November 9, 1995, recites plaintiff's "past history" of a back injury, a diagnosis of dyslexia, long term asthma, "border line high blood pressure," and plaintiff's statement that "he has periods of moderate to severe depression." Dr. Lee's physical examination was essentially "non-productive as far as any significant disabling physical findings," but he believed that a chronic pain syndrome is frequently associated with back surgery, and it was his opinion that that pain, together with dyslexia and asthmatic bronchitis and depression caused plaintiff to be "unable to work at present and will be in the foreseeable future." (Ex. B, Stipulation to Supplement Transcript)

At the hearing, plaintiff testified that after his back injury he received unemployment benefits for six months and looked for work but was not offered any job. He did attempt to help out with the "family business" which apparently was operated from the family home, working about 10 to 15 hours per month, or 2 to 4 hours per week. Apparently that is the limit of available work at the firm. He stated that he can't do any lifting or heavy work and believes that a work environment affects his allergies. During a typical day, when plaintiff wakes, he does stretching exercises which relieve back stiffness; he walks for exercise, does some household work and cooking, watches television, visits friends and family, plays video games, and works in his garden 30 to 45 minutes a day. He also testified that he can sit in a car for long distances but doesn't himself drive long distances. These drives include stops regularly so he can stretch and move around. Plaintiff testified that he has constant pain which varies during the day in severity. When pain occurs he does stretches again and lies down a couple of times a day from 30 minutes to an hour. Plaintiff's asthma is relieved by a prescription drug, and he takes over-the-counter medication for pain and avoids any activity which brings it on.

With reference to his mental disabilities, plaintiff believes that the family was protective and "made allowances" for him in connection with his work for the family business. During his early school years he had reading and speech difficulties and took special classes for this but was never in special classes during later school years. He further testified that he thinks about his physical disabilities once or twice each day, which sometimes leads to depression; he has had some "short term" memory problems and difficulty in concentration, and he believes that he has withdrawn more from social activities since his injury. He stated that he did not carry through with Dr. Brodsky's recommendations for psychological counseling and treatment for depression, although he has access to personal funds to pay for such treatment. In this respect he testified that "I just didn't want to go through it." (Tr. 261).

James Molski, the vocational expert who testified at trial, reviewed the exhibits in the case file prior to the hearing, and prepared Exhibit 30 with regard to vocational considerations, based upon the written record. In Exhibit 30, Mr. Molski classified plaintiff's prior employment at a heavy exertional level, since it required frequent bending and lifting up to 50 pounds, with occasional lifting of over 100 pounds; and, for this reason, he believed plaintiff could not return to his prior work. It was his further opinion that the fact that even though plaintiff had special education classes for reading problems in early years, this would have no effect on his opportunities for present employment because plaintiff was able to function in high school without any special services.

The hypothetical assumptions presented to Mr. Molski by the ALJ listed these limitations upon plaintiff's residual functional capacities: the ability to sit eight hours in an eight-hour day, but only one hour at a time, the same with standing and walking; to lift and/or carry, push and/or pull, 20 pounds occasionally, 10 pounds frequently, climbing limited to stairs, occasionally; no stooping and bending more than four times an hour, with occasional kneeling, squatting no more than 10 times an hour, driving, occasionally; twisting no more than four times an hour, and occasional reading. The limitations further included avoiding vibration, proximity to moving parts of machinery; exposure to toxic or caustic chemicals, fumes, odors or dust, combined with the ability to comprehend and follow simple instructions and to perform simple routine, repetitive asks.

With reference to job opportunities as listed in the Regulation available to plaintiff in the sedentary, light, and medium unskilled categories, the expert testified that the entire base of 900 medium jobs would be eliminated, 50% to 60% of the light categories would be eliminated, and the sedentary base would be reduced by 10% to 15%. The occupations which would remain in the light category would be such as ticket seller, assembler, and at the sedentary level, there would be positions left such as surveillance monitor, and sedentary cashier positions—all such positions being available in plaintiff's locale. The expert further testified that, if plaintiff's testimony was entirely credible, he would not be able to handle work activities because of the need for lying down on a regular basis through the course of the day because this would eliminate the jobs with any exertion. On cross examination by plaintiff's counsel, the expert agreed that if the inability to concentrate on a task for longer than five minutes was added to the hypothetical situation, then such person would be precluded from the employment bases identified.

The ALJ accepted into evidence a. report dated November 16, 1995, of Jerry D. Hardin, M.S., a Human Resources Consultant, and plaintiff's vocational expert, who reviewed the Social Security file of record in this case. (Ex. C, Stipulation) It is his opinion that plaintiff "is effectively precluded (from a vocational standpoint) from obtaining and performing gainful work activities on a 'day in day out' basis in any of the limited amount of jobs that might still be available to" persons with his limitations.

In evaluating the evidence, the ALJ followed the required five-step analysis for determining whether a claimant is disabled. See generally, 20 C.F.R., Ch. 111, §§ 404.1520, et seq. (4-1-95 Edition), and *Williams v. Bowen*, 844 F.2d 748, 750–752 (10th Cir.1988). Step one determines whether a claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b) If he or she is, benefits are denied. At this first step, it is clear that plaintiff was not engaged in gainful employment after the onset date of May 30, 1993.

■ The second step is to determine whether there is "an impairment or combination of impairments which significantly limits ... physical or mental ability to do basic work activities." Age, education, and work experience are not considered at this step. 20 C.F.R. § 404.1520(c). These impairments must be such as to significantly limit the claimant's ability to do basic work activities—that is—"the abilities and aptitudes necessary to do most jobs." ... *Williams v. Bowen*, *supra*, 844 F.2d at 751. Examples of these abilities include physical functions, such as walking, standing, sitting, the capacity to see, hear and speak, the understanding and ability to carry out simple instructions, use of judgment, dealing appropriately with

supervision and co-workers, and with changes in a routine work setting. 20 C.F.R. § 404.1521. If the evidence makes a de minimis showing of medical severity, then the ALJ must proceed to step three.

 At this step in the evaluation, the ALJ found that plaintiff does experience depression and pain due to his back injury, and that these are impairments which cause "significant" vocationally relevant limitations. However, the ALJ discounted plaintiff's testimony regarding vocational limitations because of difficulty in reading because of dyslexia, and his asthma condition which requires that he avoid exposure to fumes. In so doing, the ALJ noted that plaintiff's own testimony and the medical record established that the asthma is controlled by medication and has not required hospitalization or physician intervention. As to the claimed dyslexia which allegedly requires constant rereading of material, the evidence is that plaintiff reported to Dr. Boll that he reads the newspaper for 30 to 40 minutes each day and magazine articles two or three times a week. The record also established that plaintiff was able to perform the reading necessary to maintain his job as a vacuum cleaner repairman and to handle the paperwork required. It was further noted that the testifying vocational expert was of the opinion that since plaintiff was able to read and write sufficiently to complete the twelfth grade, his dyslexia would not preclude basic work activity. Under these circumstances, the ALJ found that the impairments of asthma and dyslexia would not be classified as "severe impairments" under the law, and that conclusion is supported by substantial evidence.

 At step three of the analysis, the question is whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. If the impairment is listed, it is conclusively presumed to be disabling without further reference. The ALJ found that plaintiff's impairments do not meet or equal the criteria established for an impairment shown in the Listings of Impairments in Appendix 1, Subpart P, Regulations No. 4. In particular, the ALJ found that the medical records of plaintiff's back injury did not describe any of the specified criteria that would meet or equal Listing 1.05 in the Appendix such as calcification of ligaments, osteoporosis, limitation of motion or significant motor loss, and that finding is completely supported by the medical record. In connection with a functional loss connected with plaintiff's depression and mental impairment, the ALJ found that the degree of functional limitation on this account is not substantial to the degree that it would prevent plaintiff from engaging in work activity. It was noted that this limitation has only slight effect in regard to daily activities since plaintiff testified that he interacts with family and friends on a daily basis and gets along well with people, and the record establishes plaintiff has never had episodes of deterioration or decompensation in work settings.[1]

The ALJ assessed plaintiff's allegations of disabling pain in light of criteria contained in 20 C.F.R. § 404.1529, considering such factors, as plaintiff's credibility with reference to testimony which is inconsistent with claims of disabling pain. In this respect, the ALJ concluded:

> That the claimant is able to engage in essentially normal daily and social activities discredits his allegations of significant pain that would prevent substantial gainful work activity. The claimant's stated need to periodically lay down and rest during the day i's not documented by any medical evidence in the file. The objective medical evidence in file does not support the claimant's stated symptoms of pain and limitations.

> The claimant's testimony, including the allegations contained in the record, is not credible as demonstrated by inconsistencies between his testimony and the evidence of record as noted above.. the degree of pain claimant has is not disabling. These factors considered together support a different conclusion as Lo the level of pain claimant experiences, and overall are

---

1. The OHA Psychiatric Review Technique Form, completed by the ALJ, appears at pp. 28–31 of the Record. No functional limitations are manifested at the listing level. (Tr. 31).

felt to indicate that the claimant has fluctual, but probably "moderate pain."

If the impairment is severe, but is not a listed impairment, the inquiry proceeds to a fourth step which requires a determination of the claimant's "residual functional capacity and the physical and mental demands of the work ... done in the past." If the claimant can still perform his past work, he is not disabled. 20 C.F.R. § 404.1520(e).

At step four, the ALJ did find that plaintiff was unable to perform his past relevant work. When the examiner finds that the claimant is unable to do the work which he or she has done in the past because of severe impairment, the evaluation process then goes on to the fifth step to consider the claimant's residual functional capacity as it may relate to the complainant's age, education, and past work experience. 20 C.F.R. § 404.1520(f). At this point, the burden shifts to the Commissioner to show that there are other jobs existing in significant numbers in the national economy which plaintiff can perform. Such jobs must be consistent with medically determinable impairments, functional limitations, and vocational factors. *Thompson v. Sullivan,* 987 F.2d 1482 (10th Cir.1993). This residual capacity determination includes a consideration of all symptoms, including pain. 20 C.F.R. § 404.1528. The claimant's statements alone are not enough to establish that there is a physical or mental impairment. *Gatson v. Bowen,* 838 F.2d, 442, 447 (10th Cir.1988). There must be medical evidence of an impairment which could substantiate an individual's statements concerning the symptoms of his condition. Medical findings consist of symptoms, signs, and laboratory findings. "Symptoms" are the claimant's own description of a physical or mental impairment. "Signs" are anatomical, physiological, or psychological abnormalities which can be observed from medically acceptable clinical diagnostic techniques. "Laboratory findings" are anatomical, physiological, or psychological phenomena which can be shown by laboratory diagnostic techniques, such as chemical tests, such as X-rays, electrocardiograms, or electroencephalograms, etc. 20 C.F.R. § 404.1528.

As previously noted, in determining residual functional capacity, the ALJ did not fully credit the limitations described by plaintiff in his hearing testimony. In this instance, the ALJ relied upon the vocational expert's reply to hypothetical questions that there existed in significant numbers in national and regional economies light, sedentary, unskilled work activity that a person with plaintiff's limitations could perform, and therefore plaintiff is not disabled under the law.

Plaintiff alleges that the hypothetical questions put to the vocational expert were faulty because they did not include all of his claimed limitations. Without question, the ALJ may restrict the questions to those limitations which he has found to be based upon credible evidence. *See Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir.1993). The expert's opinion, based upon those questions, is sufficient to sustain the finding that plaintiff can perform a significant number of sedentary, unskilled jobs which exist in the economy.

The court must conclude that substantial evidence supports the Commissioner's decision denying benefits to this plaintiff. Accordingly, the judgment the Commissioner is AFFIRMED.